William B. VITEK, Appellant,

v.

Robert H. FINCH, Secretary of Health, Education, and Welfare, Appellee.

No. 14479.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 11, 1970.

Decided March 2, 1971.

Richard C. Murray, Lutherville, Md., for appellant.

Leonard M. Linton, Jr., Asst. U. S. Atty. (George Beall, U. S. Atty., on brief) for appellee.

Before SOBELOFF,* WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

This action was brought in the District Court by the appellant, William B. Vitek, against the Secretary of Health, Education, and Welfare pursuant to § 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to obtain judicial review of a final decision of the Secretary denying the appellant's application for disability insurance benefits under §§ 216(i) and 223 of the Act, 42 U.S.C.A. §§ 416(i) and 423. The District Court granted the Government's motion for summary judgment, and this appeal followed.

I

The standard for judicial review in cases of this nature is prescribed in § 205(g) of the Act, 42 U.S.C.A. § 405(g), as follows: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *." Accordingly, the traditional function of the courts in these cases is not to try them de novo, or resolve mere conflicts in the evidence. However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's

* Judge Sobeloff attained the status of Senior Circuit Judge on December 31, 1970.

findings, and that his conclusion is rational. Bridges v. Gardner, 368 F.2d 86, 90 (5th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964); see also Philley v. Cohen, 293 F.Supp. 1068, 1072 (N.D. Miss. 1968); Baker v. Celebrezze, 241 F.Supp. 971, 973 (E.D. S.C. 1965). Where the Secretary's determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the Secretary's decision "with or without remanding the cause for a rehearing." 42 U.S. C.A. § 405(g); Thomas v. Celebrezze, supra; Branch v. Finch, 313 F.Supp. 337, 342 (D. Kan. 1970); Forbes v. Finch, 307 F.Supp. 1000, 1005 (E.D. Tenn. 1969); Hinson v. Celebrezze, 249 F.Supp. 232, 234 (D. S.C. 1966).

## II

■ In October 1966 the claimant filed his present application for benefits, alleging that primarily because of a heart condition he was unable to engage in any substantial gainful employment.[1] To establish his right to disability benefits, Vitek had the burden of demonstrating that he was disabled prior to September 30, 1962.[2]

In 1920 Vitek, then only 14 years of age, entered the employ of the Daily Record, a legal publication in Baltimore, as an office boy. He attended night school to complete his high school education and to study accounting. He served the Daily Record steadily as an accountant for more than thirty years until May 1957, when, at the age of 51, he suffered a nervous breakdown. Shortly thereafter he underwent an appendectomy and a cholecystectomy. After leaving the hospital, Vitek did not return to work at the Daily Record, and remained unemployed for two years. Dr. Samuel Morrison, his personal physician, advised Vitek to try some light work, and so, in the spring of 1959, he agreed to set up a bookkeeping system for his nephew who was opening a drug store. For three months he assisted his nephew, but on July 17, 1959, he collapsed at the drug store. At the hospital the diagnosis was "acute myocardial infarction" (a heart attack). Vitek remained in the hospital for two months, and since his discharge he has not been employed. In 1966, Vitek was again hospitalized for angina pectoris.

In the application submitted to the Social Security Administration, Vitek complained that he was unable to work because slight exertion caused shortness of breath and pain in his left arm. He also stated that climbing stairs caused him difficulty, and that if he tried to bend over, he fell. The claimant reported that he could water his lawn, and occasionally tried to mow the lawn, but that such exertion could not be tolerated more than fifteen minutes and he required several hours bed rest to recover from that effort.

The medical testimony submitted to the Secretary consisted of two reports, one by Dr. Morrison, who treated Vitek for more than fifteen years, and the other by Dr. Sidney Scherlis, a cardiologist, who examined Vitek at the request of the Social Security Administration in November 1962. Dr. Morrison stated that in the period from July 1959 to September 30, 1962, Vitek "could sit at a desk, etc., but not for a full-time work period," and that he had cautioned Vitek about climbing stairs. Dr. Morrison characterized Vitek's condition as of October 1, 1962, as "static," adding that no improvement was expected, that his condition shows "post coronary status" and that "any untoward walking, etc., results in dyspnea and/or angina." Additional reports from Dr. Morrison indicated

1. Vitek had filed an earlier application in June 1962 which was rejected without a hearing at an initial administrative level. The Secretary does not contend that any weight or effect should be given in the present case to that determination.

2. This was the last date of his disability coverage under the Act.

that Vitek had recurrent attacks of precordial pain and had developed a "degree of myocardial insufficiency which keeps him symptomatic on the least exertion." Dr. Morrison's judgment, based on his patient's "coronary" and "emotional" status, was that Vitek was unable to resume his bookkeeping job or assume *any* other job.

Dr. Scherlis, the Government's doctor, found that Vitek had some limitation of movement in the right upper extremity, and suggested that an orthopedic examination might be proper. Using a classification system developed by the American Heart Association, he rated Vitek's cardiac condition as I-II-B. According to a questionnaire used by the Social Security Administration, a Class I cardiac condition refers to an impairment from 0 to 15 percent of the whole man and Class II an impairment from 20 to 40 percent of the whole man. Significantly, Dr. Scherlis expressed no opinion as to the claimant's capacity to work.

The Hearing Examiner decided in favor of the applicant, basing his judgment on Dr. Morrison's evaluation and his own assessment of Vitek's condition:

> The evidence shows that the claimant, prior to 1957, had been a steady, reliable worker all of his life until that year. There can be no question about the motivation to work of a man who worked for the same employer for 37 years. The claimant, after all his many years of hard work, suddenly stopped working entirely * * *.
>
> He did attempt to help his nephew open a drugstore but this effort was not substantial and, even more significant, is the fact that he had a very serious heart attack while helping in the drugstore. He has not engaged in any strenuous exercise of any kind since. He has done nothing and yet he has had two more episodes of angina pectoris severe enough to require hospitalization in 1966.

The Appeals Council of the Social Security Administration, however, reversed the Hearing Examiner, primarily on their interpretation of Dr. Scherlis' report, and in particular their understanding of the I-II-B cardiac condition reported by him. The Appeals Council explained:

> * * * the claimant's heart condition could be classified no worse than IIB. The Roman numeral II refers to the functional capacity of the heart and is used by the American Heart Association to refer to patients with cardiac disease resulting in slight limitation of physical activity. These patients are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain. The letter B refers to therapeutic classification and is used to describe patients with cardiac disease whose ordinary physical activity need not be restricted, but who should be advised against severe or competitive physical efforts.

Since Vitek was a bookkeeper, an occupation which is sedentary in nature, the Appeals Council reasoned that a II-B heart condition should not prevent Vitek's return to work. The Council dismissed Dr. Morrison's explicit statement that Vitek was *unable* to work, maintaining that Dr. Morrison's opinion was not supported by adequate clinical and laboratory tests, and that Dr. Scherlis did perform the proper medical tests. We find no basis in the record for this assertion; indeed the record plainly discloses that Dr. Morrison did perform the customary tests. A comparison of the testing procedures reported by the two physicians demonstrates that they were substantially the same; the attempted distinction is groundless. The Appeals Council, it plainly appears, has misconstrued the record.

In Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), this court outlined four elements of proof to be considered in making a finding of claimant's ability or inability to engage in any substantial gainful activity: (1) the objective medical facts and clinical findings; (2) the opinions and diagnoses of the doctors; (3) the subjective evidence of pain and

disability testified to by the claimant; and (4) the claimant's education, work history, and age. As we read the present record, weighing the factors set forth in *Underwood,* we conclude that the evidence overwhelmingly demonstrates the existence of a disability within the meaning of the Act, and that the Secretary's finding that the claimant is capable of returning to his job is without substantial support.

It is beyond dispute that the claimant had, before his eligibility for benefits terminated, a heart ailment which subjected him to serious pain and discomfort. Furthermore, notwithstanding the conclusion of the Appeals Council, we find on close analysis that there is no actual conflict in the record as to the disabling effect of this condition on Vitek's employability. Dr. Morrison, who had treated Vitek for fifteen years, declared unequivocally that Vitek was unable to work. While the Appeals Council is not bound by this assessment, this court has emphasized that the opinion of a claimant's treating physician is entitled to great weight, for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Underwood v. Ribicoff, *supra.* The Council's attempt to dismiss Dr. Morrison's conclusion with the bald assertion that it is supported by inadequate medical data is utterly without foundation.

Moreover, Dr. Scherlis' classification of Vitek's cardiac condition as I-II-B does not dictate, as the Appeals Council assumed, a conclusion contrary to Dr. Morrison's. The I-II-B heart classification, as interpreted by the Council, is itself ambiguous and self-contradictory, indicating on the one hand that "ordinary physical activity need not be restricted," yet recognizing that "ordinary physical activity results in fatigue, palpitation, dyspnea, or angina pain." The classification tendered by Dr. Scherlis, unaccompanied by any explanation or judgment as to Vitek's ability to work, provides no "substantial evidence" to support the Secretary's determination.

The statute puts a limitation on the court's power of review, but there is a concomitant duty on the Secretary to explicate the grounds of his decision. Here the Secretary relies solely on an equivocal classification tendered by a cardiologist who examined Vitek but once, and did not himself venture an opinion as to the crucial issue, Vitek's ability to engage in any substantial gainful employment. There was no basis for the Appeal Council's rejection of the expert opinion of the claimant's treating physician that Vitek was unable to work, or its reversal of the Hearing Examiner's decision in favor of the claimant. We hold that there is no substantial evidence, on the record as a whole, to support the Secretary's denial of benefits, which rests entirely on the conclusions of the Appeals Council.

Accordingly, the judgment of the District Court is reversed, and the case remanded to the District Court for the entry of an order awarding disability benefits to the claimant.