**Lewis C. MORGAN, Jr., Plaintiff,**

v.

**David MATHEWS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 75–0480–R.**

United States District Court, E. D. Virginia, Richmond Division.

March 1, 1976.

N. Leslie Saunders, Jr., Minor, Saunders & Benedetti, Tom Johnston, Richmond, Va., for plaintiff.

David A. Schneider, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Lewis C. Morgan, Jr., brings an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which was held that he was not entitled to disability benefits upon an application filed on March 4, 1974. The sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. See 42 U.S.C. § 405(g). Both parties have cross-motioned for summary judgment, and the Court deems the matter ripe for determination.

■ The function of the Court is not to try this matter *de novo*, nor to resolve mere conflicts in the evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. *E. g., Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975); *Viteke v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

The facts are not in dispute. They are, as set forth by the defendant, as follows:

Plaintiff filed an application for a period of disability and for disability insurance benefits under date of March 4, 1975, alleging that he became unable to work on June 18, 1973, at age 47. The application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Virginia State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that plaintiff was not under a disability. The Administrative Law Judge, before whom plaintiff, his wife, his attorney and a vocational expert appeared, considered the case *de novo*, and on April 15, 1975, found that plaintiff was not under a disability. The Administrative Law Judge's decision became the final decision of the Secretary of Health, Education and Welfare, when the Appeals Council approved the decision on July 25, 1975.

To qualify for a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The term "disability" is defined in § 223 to mean:

"[A]n inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death for which has lasted or can be expected to last for a continuous period of not less than twelve months;—

"(2) For purposes of paragraph (1)(A)—

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers ei-

ther in the region where such individual lives or in several regions of the country.

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from an anatomical, physiological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Plaintiff, a lieutenant in the fire department of Richmond, Virginia, alleged he became unable to work June 18, 1973, at age 47, because of a fractured leg sustained in an accident while on duty. The Secretary's decision is based on the finding that plaintiff could perform several types of sedentary work suggested by the vocational expert at the hearing before the Administrative Law Judge.

The medical evidence includes a report dated February 22, 1974 from the attending orthopedic surgeon, Dr. Virgil May to Dr. Eppes, plaintiff's personal physician. Dr. May noted that plaintiff had been injured June 18, 1973, sustaining a comminuted fracture involving the left ankle joint with fractures of the left tibia fibula. He described plaintiff as walking with a limp when last seen on February 22, 1974. Examination at that time revealed a limitation of motion in the left ankle and Dr. May felt plaintiff could not continue as an active fireman. He estimated disability as 25% of the left leg but considered plaintiff capable of sedentary work.

Dr. Eppes, a family practitioner (American Medical Directory, 26th Edition 1973, page 3645), advised the Employees Medical Service on February 25, 1974 that he had been informed by Dr. May that plaintiff had reached maximum improvement but still had permanent disability. He recommended that plaintiff be awarded disability retirement in line of duty.

Plaintiff was subsequently examined March 5, 1974 on behalf of the Director of Public Safety of the City of Richmond. The examining physician, Dr. Perkins, reported he considered plaintiff medically unsuitable for work as a fire fighter and should be retired. He also commented that it was his opinion that plaintiff was completely incapacitated from performing any work or occupation for which he could be reasonably fitted by education, training or experience.

Plaintiff was seen again by Dr. May on July 15, 1974 and in the report to plaintiff's attorney, Dr. May stated examination had revealed some enlargement about the left ankle where bone had been crushed and new bone formed. There was some tenderness but x-rays show the fracture to have healed. He noted some traumatic arthritis under the ankle joint affecting the ankle and heel. He submitted the opinion that plaintiff could perform an occupation which allowed him to sit at least 50% of the time and not be on his feet more than two hours at a time. However, based on plaintiff's educational background, he questioned whether or not he would be able to secure work that would allow him to do this.

On February 20, 1975, plaintiff was examined by Dr. Bailey, a Board certified specialist in internal medicine, who reported to the Richmond Retirement System that he considered plaintiff incapacitated from performance of the duties of his position or of a position in any other city class at the same or higher pay range.

In a "to whom it may concern" report dated April 3, 1975, Dr. Eppes stated he had seen plaintiff March 31, 1975 for a complaint of pain in the left hip area. Examination and x-rays revealed no abnormality. He felt the discomfort might be an inflammatory process secondary to plaintiff's limp and described an anti-inflammatory drug.

Plaintiff was re-examined by Dr. May on April 10, 1975, which was subsequent to the hearing and his report to plaintiff's attorney dated April 30, 1975 was

submitted to the Appeals Council. Dr. May stated plaintiff was complaining of pain in his left foot, ankle and hip. X-rays of his left hip and pelvis were essentially normal. Dr. May felt the hip pain was due to his left ankle which was swollen. He moderated his previous evaluation of plaintiff's residual capacity by stating he now considered plaintiff capable only of performing a sitting job which would not require more than two hours of walking, stooping or bending per working day.

Plaintiff was born October 14, 1925, completed the sixth grade and part of the seventh, and also took special courses pertaining to fire fighting. The Administrative Law Judge described him as very intelligent and articulate. He had worked in a cigarette factory, served in the U.S. Navy as a seaman, following which he delivered electrical appliances, held various sales jobs and ultimately joined the fire department where he served for a period of twenty-three years, rising to the rank of lieutenant. In addition to fire fighting, he worked part-time every other day as a painter for sixteen years. His present injuries giving rise to his disability occurred on June 18, 1973 when a fire truck in which he was riding collided with a tractor trailer. While in the fire department he was subjected to an annual physical review and when examined after recovering from his injuries, it was recommended that he be retired. He received sick pay from the date of the accident until March 1974 and then went on disability retirement. He had been awarded workmen's compensation benefits and these were turned over to the city.

At the hearing on April 8, 1975, plaintiff testified he had been receiving treatment from Dr. Eppes for five-six years for a bleeding duodenal ulcer for which he had been taking a medication (Antrocol). He testified that this medication affected his eyes, causing his vision to blur so that he was relieved of his duties as a fireman on the occasions he took it and was presently on it, four doses a day, most of the time. Plaintiff had al-

leged no disabling condition other than his injured leg and had affirmed the absence of any other impairment on January 24, 1975. Plaintiff described his current capacities as being able to sit for up to two hours at a time and stand for about an hour. He said he had difficulty with stairs, cannot bend, stoop or lift and does not drive a car at night because he cannot operate the headlight dimmer switch with his left foot. The Administrative Law Judge noted that plaintiff sat comfortably for 1¼ hours at the hearing.

Plaintiff's wife, Anne Fox Morgan, testified she has rheumatoid arthritis and required assistance which her husband can no longer render, and additionally that he is unable to do any maintenance or repair work around their home.

The Administrative Law Judge requested a vocational expert, Dr. Jarrell, to appear at the hearing. Dr. Jarrell testified that he had reviewed the entire exhibit file and had heard the testimony. He said if plaintiff's medication affects him as much as he claimed it did, and he was on it most of the time, there would be no gainful occupation he could perform on a sustained basis. However, if it were assumed the medication did not have such side effects, there were a number of sedentary jobs he could fill. Dr. Jarrell listed these as eyelet machine operator, case loading machine operator, pin machine operator, package laborer, cigarette catcher, toll collector and parking lot cashier. He listed employees in the area where these jobs exist in significant numbers.

■ The Court has considered the entire record herein, and mindful of its limited review in these cases, concludes that the final decision of the Secretary was not based upon substantial evidence. *Viteke v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Each of the doctors that testified expressed pessimistic opinions, corroborated by specific findings of substantial physical impairment on the plaintiff's ability to secure work, and the vocational expert indicated that the drug side effects, if valid, (and there was little evi-

dence to the contra) would incapacitate the plaintiff from further gainful occupation. Accordingly, the plaintiff's motion for summary judgment will be granted.