**Mary B. FLIPPEN, Plaintiff,**

v.

**F. David MATHEWS, Secretary, Health, Education and Welfare, Defendant.**

Civ. A. No. 76–0178.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 8, 1976.

Russell V. Palmore, Jr., Richmond, Va., for plaintiff.

Joel Cohen, Randolph W. Gaines, Social Security Division, HEW, Washington, D. C., Eliot Norman, Asst. U.S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Mary B. Flippen brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which it was held that she was not entitled to disability benefits upon an application filed October 4, 1973. The

sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. *See* 42 U.S.C. § 405(g). The matter is before the Court on plaintiff's and defendant's cross-motions for summary judgment and is ripe for disposition.

■ The function of the Court is not to try this matter *de novo* nor to resolve conflicts in the evidence. The Court, however, is duty bound to carefully scrutinize the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975); *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The facts are not in dispute. They are as follows: Plaintiff filed an application for disability insurance benefits on October 4, 1973 alleging that she became unable to work on September 15, 1973, at age 48 because of arthritis. The Administrative Law Judge before whom plaintiff, her husband, a doctor, and a vocational expert appeared, found on July 2, 1974 that plaintiff was not under a disability. The Appeals Council reviewed the Administrative Law Judge's decision and after considering additional evidence found on March 1, 1976 that plaintiff was not under a disability.

At the hearing before the Administrative Law Judge, plaintiff testified that she had a 12th grade education, augmented by one year of college. She had worked for seven or eight years as a personnel clerk, for eighteen months as a bookkeeper, and for the last eleven years as a bank teller. She testified that she had ceased working on September 15, 1973 because she could not stand on her feet or even sit because of the arthritis in her hips and legs, and because three doctors who had examined her, Dr. Harris, Dr. Irby and Dr. Owen advised her to stop working. Her medication consisted of ascriptin, indocin, and hydrodiuril. The plaintiff testified that the pain was constant, mostly in her hips and knees but also in her hands and elbows. In the morning she is very stiff and it may take several hours before she can get any mobility, although on what she describes as bad days she cannot acquire mobility at all. She testified that she is unable to do most ordinary activities including housework and playing bridge with her friends.

Plaintiff's husband also testified corroborating her testimony concerning her constant pain and particular difficulties in the mornings.

Dr. A. Epps Harris, Jr., Associate Professor at MCV in the Department of Family Practice, testified that he had been treating the plaintiff as her family doctor since 1952. Based on his examinations, he diagnosed her conditions as hyperthyroidism, degenerative joint disease of the hips and knees, bursitis of the hips, hammertoes, knock-knees and deformity of the feet, mild varicose veins, and a possible sero-negative rheumatoid arthritis. He stated that she had a persistent type of pain even at rest, when asked for his opinion on her actual functional limitations, he testified that she could not walk or stand on her feet for long periods, could do no climbing, lifting, pushing and pulling, and that her pain would interfere with her ability to concentrate and function normally. Dr. Harris also testified that he had known the plaintiff all her life, that she was conscientious and well motivated and that she had pushed herself in order to keep working as long as she had.

The other medical evidence in the plaintiff's file included a report from Dr. A. E. Harris, Jr. dated October 24, 1973 in which he states that Mrs. Flippen had been seen by him, by Dr. Robert Irby and Dr. Duncan Owen for symptoms of arthritis dating back to 1963 which had been characterized by constant pain and by much stiffness, particularly in the early morning. Through the years, she had many injections into the joints but the course of the disease had been relentless in spite of anti-inflammatory oral agents. He stated that he felt she was completely disabled from her arthritis and after consulting with Dr. Irby and Dr. Owen advised her to retire.

A report from Dr. Irby dated January 21, 1974 stated that he last saw Mrs. Flippen on

May 21, 1971 and that at that time it was his feeling that she was not able to work or carry on a gainful occupation because of her arthritic condition. A report dated January 21, 1974 from Dr. Duncan S. Owen, Jr., a specialist in internal medicine, stated that he had seen Mrs. Flippen in consultation on April 16, 1973 and recommended medical retirement as he could not see how she could carry out a gainful occupation.

Reports from Dr. A. E. Harris, Jr. dated January 24, 1974 and May 7, 1974 reiterate his findings and diagnoses, and his conclusions that Mrs. Flippen is completely disabled because of her rather severe arthritis.

Dr. Andrew V. Beale, a vocational expert, testified at the hearing. Dr. Beale was asked what jobs, if any, plaintiff could do which existed in significant numbers in various areas of Virginia and in the national economy considering her age, education, prior experience, and assuming that she would be limited to situations not requiring her to walk or stand on her feet for prolonged periods with no climbing, lifting or pushing. Dr. Beale stated that there were a large number of sedentary jobs which the plaintiff could perform citing examples such as cash office clerk, matcher biller, cancellation clerk and radio dispatcher. In response to a question from the plaintiff, Dr. Beale stated that these were all full time jobs requiring that a person be able to work eight hours a day, five days a week. Dr. Beale was then asked for his opinion assuming the additional factor based on Dr. Harris's statement that Mrs. Flippen's pain would interfere with her ability to concentrate. Dr. Beale replied that if her pain were severe enough to adversely affect her ability to concentrate or to think, she would not be qualified for any type of job.

On July 2, 1974, the Administrative Law Judge found that Mrs. Flippen was not under a disability and denied her benefits under the Social Security Act.

Additional evidence concerning the plaintiff was submitted to the Appeals Council for its review of the hearing decision. That evidence included:

An additional report from Dr. A. E. Harris, Jr. dated August 21, 1974 with further medical evidence, diagnoses of the plaintiff's condition as degenerative joint disease, and the conclusion that she was then unable to carry on any type of gainful occupation.

A psychiatric social survey dated January 29, 1975 from Mary Joe Krueger, submitted at the request of the Appeals Council detailing the limitations which Mrs. Flippen's disability has put on her day-to-day functioning and activities, concluding that she would not be able to adhere to regular hours and routine expectations.

A medical report dated February 11, 1975 from Dr. Weir M. Tucker, a Board certified specialist in neurology and psychiatry, which states that Mrs. Flippen's results from the neurological and psychiatric examinations were normal but that the structural defects in her feet and knees caused her difficulty in standing.

A medical report dated January 24, 1975 from Dr. Thomas Beath, a Board certified specialist in orthopedic surgery, stating that Mrs. Flippen suffers from quiescent low grade multiple joint arthritis. The physical and x-ray findings reveal mild abnormalities in the lumbar spine and hips, and flat feet. Dr. Beath stated that there was no important limitation of range of motion of the hips or knees. On the basis of his objective findings, he concluded that there was no more than a 20% generalized disability and that the serious symptoms revealed by Mrs. Flippen and by Drs. Irby and Harris's reports could not be reconciled with his findings.

A medical report dated June 26, 1975 from Dr. Victor A. McKusick, a Board certified internist, stated that Mrs. Flippen had signs of an underlying connective tissue disorder called Ehlers-Danlos syndrome. The physician also found an active synovitis and a myopathy which caused considerable proximal muscle weakness. It was his opinion that the claimant was not employable.

A medical report dated June 25, 1975 from Dr. Mary Betty Stevens, a rheumatologist and internist, stated that the most

striking and obvious gross clinical finding was the claimant's difficulty in gait and posture related to lower extremity pain and weakness. She reported hyperextensibility of the articular skeleton. It was her opinion that Mrs. Flippen had a major degree of disability and was medically unable to consider employment.

After reviewing this additional evidence, along with the record below, the Appeals Council issued its decision on March 1, 1976, finding no entitlement to disability insurance benefits and this became the final decision of the Secretary of HEW.

■ The Court has considered the entire record herein, and mindful of its limited review in these cases, concludes that the final decision of the Secretary was not based upon substantial evidence.

In order to qualify for disability benefits under Section 223 of the Social Security Act, 42 U.S.C. § 423, there must be present (1) the medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months (42 U.S.C. § 423(d)(1)(A)) and (2) a factual determination that the impairment actually renders the plaintiff unable to engage in any substantial gainful employment. *See Hicks v. Richardson*, No. 71–2196 (4th Cir. July 24, 1972); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964). Section 223(d)(2)(A) of the Act further defines "disability" as follows:

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national econo-my' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

In *Underwood v. Ribicoff*, 298 F.2d 850 (4th Cir. 1962), the Court outlined four elements of proof to be considered in making a finding of claimant's ability or inability to engage in any substantial gainful activity: (1) the objective medical facts and clinical findings; (2) the opinions and diagnoses of the doctors; (3) the subjective evidence of pain and disability testified to by the claimant; and (4) the claimant's education, work history, and age.

It is beyond dispute that the instant plaintiff suffers from arthritis. Four out of five doctors who examined the plaintiff concluded that she was unable to work as a result of this arthritic condition. The plaintiff testified as to the constant pain in her hips and knees and the extreme limitations which her condition places on her ability to function normally and this testimony was corroborated by her husband and treating physician. Finally, a letter dated May 8, 1974 from J. A. Wilson, Jr., President of Citizens Bank & Trust Company, for whom Mrs. Flippen was an employee for eleven years until she became physically unable to work in September, 1973, states:

"She was a valued, faithful and loyal employee, often working when she was not physically able and when it was obvious that she was suffering much agony. We tried her in different jobs throughout the bank, some standing and some sitting, in an effort to make her more comfortable, with the hope that we could keep her on our staff. Finally, the pain became unbearable and her doctors recommended that she resign her position."

It is beyond the reasoning of this Court to see how, if Mrs. Flippen could not continue working at the Citizens Bank and Trust Company where unusual efforts were made to accommodate her limitations and degenerating condition, she would be able to perform any of the jobs referred to by the vocational expert.

In viewing the record as a whole and weighing the factors set forth by the United States Court of Appeals for the Fourth Circuit in *Underwood, supra,* the Court concludes that the evidence overwhelmingly demonstrates the existence of a disability within the meaning of the Act and that the Secretary's finding that the plaintiff is capable of substantial gainful employment is without substantial support.

Accordingly, the defendant's motion for summary judgment will be denied and the plaintiff's motion for summary judgment will be granted.

An appropriate order will issue.