Edith Anne HURST, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 76–0011–R.

United States District Court, E. D. Virginia, Richmond Division.

Dec. 27, 1976.

Edith Anne Hurst, pro se.

Robert W. Jaspen, Asst. U. S. Atty., Dept. of Justice, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Edith Anne Hurst brings this action under Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to review a final decision of the Secretary denying her application for supplemental security income disability benefits as provided by Section 1602 of the Act, 42 U.S.C. § 1381a. Section 1631(c)(3) of the Act incorporates by reference Section 205(g) and (h) of the Act. The sole issue before the Court is whether the decision of the Secretary is supported by substantial evidence. The matter comes before the Court on the motion of the defendant for summary judgment and the plaintiff's response thereto. The record reflects the following:

The plaintiff filed an application for supplemental security income benefits under date of January 3, 1974, alleging disability due to a number of conditions. The application was denied initially and on reconsideration by the Social Security Administration. Thereafter, a hearing was held at the

request of the plaintiff. The hearing examiner heard the testimony of the plaintiff, a vocational expert, and considered the medical records. It was determined that the plaintiff satisfied all the criteria for eligibility for supplemental security income except with respect to the issue of disability.

The plaintiff is a 48-year old woman with an eighth grade education. She last worked in 1946 as a counter-worker in a cafeteria. Since that time, the plaintiff has raised a family. For the last ten years, Mrs. Hurst has suffered from a substantial number of physical ailments requiring hospitalization and, frequently, surgery. On March 13, 1966, plaintiff was admitted to the Medical College of Virginia Hospital (MCV) for excision of a benign adenofibroma (tumor composed of connective tissue with glandular structures) of the right breast. She tolerated the procedure well and was discharged March 17, 1966 in improved condition. On August 10, 1967, she was seen in the MCV emergency room and on August 27, 1967, she was admitted to MCV for a total vaginal hysterectomy and colporraphy. She was discharged September 1, 1967 in satisfactory condition and followed in the out-patient gynecology clinic.

On October 8, 1968, plaintiff was admitted to MCV complaining of right flank pain. An intravenous pyelogram showed a small urethral stone, and corrective surgery was performed on October 10, 1968. Postoperative intravenous pyelogram on November 7, 1968 showed persistent hydronephrosis (distention of kidney with atrophy of tissue) of the kidney and dilation of the ureter. On November 9, 1968, plaintiff left the hospital against medical advice. On February 7, 1969, plaintiff returned to MCV complaining of right flank pain. Diagnoses were non-functioning right kidney and complete right ureteral obstruction. On February 8, 1969, during routine blood sampling, plaintiff became angry and signed out of the hospital against medical advice. On August 13, 1969, plaintiff was again admitted to MCV complaining of right flank pain. The diagnosis was hydronephrosis

and on August 15, 1969, she underwent a right nephrectomy (removal of kidney) and partial ureterectomy (removal of ureter).

On June 30, 1970, plaintiff was admitted to Retreat Hospital for swelling of the groin. Diagnosis was left inguinal hernia, for which surgery was performed on July 1, 1970. She was discharged July 10, 1970.

Plaintiff was examined by M. J. Vernon Smith, M.D., on December 17, 1970 for complaints of incisional pain. He planned to admit her for full urological evaluation and for neurological and psychiatric consultations if necessary. X-rays taken December 29, 1970 showed absent right kidney, and left kidney showing compensatory hypertrophy (enlargement), otherwise normal. The neurologist did not recommend exploration of the scar. She was discharged on December 31, 1970 to be followed by Dr. Vernon Smith.

On January 10, 1974, Jean So-chun Woo, M.D., reported findings from a physical examination of plaintiff. Review of body systems was essentially normal. The physician evaluated plaintiff's residual functional capacity and concluded that she could do light work including sustained sitting and lifting light weights but could not lift heavy weights, climb, push or pull. On July 16, 1974, Dr. Blades was contacted concerning plaintiff's condition. She was doing well post-operatively and had no complaints. There was no evidence of an arthritic condition noted.

Plaintiff was admitted to Retreat Hospital on April 24, 1974 with a complaint of right lower quadrant pain characterized as mild but persistent. Provisional diagnoses were right pelvic mass and possible polyp of colon. On surgery, endometrial cysts (masses of tissue resembling uterine mucous membrane occurring aberrantly in pelvic cavity) of the left ovary and sigmoid colon were found and removed. Plaintiff's course in the hospital was listed as excellent; her condition on discharge, good; and the prognosis, excellent. The treating physician, Dr. James F. Blades, gynecologist, reported that plaintiff made a complete though somewhat delayed recovery and was ad-

vised to return to work within 8–10 weeks. Plaintiff was treated at the MCV medical, surgery and gynecology clinics from November 15, 1974 to December 2, 1974 for skin lesions, suspected incisional hernia, and rectal polyp.

Mrs. Hurst testified that she suffers from great pain inflicted by bone spurs and spinal arthritis. She further testified that while she can stand to sit for short periods of time, she is unable to exert herself for more than two or three hours.

In summary, Mrs. Hurst's physical disabilities include: (1) removal of one kidney; (2) the surgical removal of endometrial cysts of the left ovary and sigmoid colon; (3) partial removal of the ureter; (4) recurring passage of kidney stones; (5) spinal arthritis; (6) incisional hernia; (7) skin cancer; (8) tumor of the right breast; and (9) a total vaginal hysterectomy and colporraphy.

Additionally, there is medical evidence of psychiatric disorders as well. Dr. Drewry, a psychiatrist, examined the plaintiff in 1966. He found her to have "an emotionally unstable personality with a large hysterical component and that the prognosis was extremely poor." This prognosis was supported by the plaintiff's conduct with examining physicians and the hearing examiner. Mrs. Hurst has accused the treating physicians of falsifying records, subjecting her to inhumane treatment, and professional incompetence. Her conduct at the administrative hearing can best be described as pitiful. She called the vocational expert "a liar" and accused both the vocational expert and the Administrative Law Judge of being prejudiced "inhumane robots."

■ This Court's function is not to try this matter de novo, nor resolve mere conflicts of evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings and that his decision is rational. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ As noted by the hearing examiner, the sole issue presented in the plaintiff's claim is whether she is disabled. Under the Act, disability is defined in terms of the ability to engage in substantial gainful employment. 42 U.S.C.A. § 1382c(a). There are essentially four basic elements of proof that go into disability. They are: (1) objective medical facts and clinical findings; (2) the opinions and diagnoses of doctors; (3) subjective evidence of pain and disability testified to by the claimant; and (4) the claimant's education, work history and age. Vitek v. Finch, supra, 438 F.2d at 1159–60; Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

■ The objective medical facts and opinions support the hearing examiner's conclusion that physically, Mrs. Hurst can do no more than medium, light and sedentary work. This limited physical residual capability must also be viewed in light of the plaintiff's subjective testimony of pain, see, e. g., Thorne v. Weinberger, 530 F.2d 580 (4th Cir. 1976), work history, education and training. That she has not been gainfully employed in 30 years, possesses no specialized skills, and only an eighth grade education support Mrs. Hurst's claim of disability.

Assuming this evidence standing alone would not support a finding of disability, the Court must also consider the evidence of the plaintiff's mental condition. See, e. g., Wyatt v. Weinberger, 519 F.2d 1285 (4th Cir. 1975). The Administrative Law Judge, while considering this evidence, deemed it insufficient to establish a disability because of the absence of "objective proof". The Court is of the view that the hearing examiner in the instant case too narrowly viewed this evidence. Mrs. Hurst was diagnosed as emotionally unstable with a large hysterical component, by a psychiatrist in 1966. Her prognosis then was extremely poor. Her subsequent behavior re-enforces both the 1966 diagnosis and prognosis. This competent medical evidence lends additional support to her claim of disability.

The Court concludes from the record herein that Mrs. Hurst's limited residual physical capabilities, her relative lack of work experience, her lack of marketable

**248**

skill coupled with her demonstrated emotional instability make out a prima facie case of disability. Having so concluded, the burden is placed upon the Secretary to show that "(1) claimant, given [her] age, education, and work experience, has the capacity to perform a specific job (2) which exist in the national economy." *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975). Such a showing was not made on the instant record. The vocational expert testified unequivocally that if the plaintiff was actually physically weakened to the point of being unable to sustain periods of work or thought he was unable to do so, she would be unable to secure employment. In view of this testimony, the Secretary has failed to rebut the plaintiff's prima facie case and she accordingly is entitled to benefits.

An appropriate order will issue.