**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2141**

BRENDA M. FINNEY,

          Plaintiff – Appellant,

     v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

          Defendant – Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Terrence W. Boyle, District Judge. (1:11-cv-00494-TWB-JLW)

Argued: October 28, 2015         Decided: January 26, 2016

Before TRAXLER, Chief Judge, KING, Circuit Judge, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion. Judge King wrote a dissenting opinion.

**ARGUED:** Jason Lee Wilson, FOLEY & WILSON PLLC, Greensboro, North Carolina, for Appellant. Candace H. Lawrence, SOCIAL SECURITY ADMINISTRATION, Boston, Massachusetts, for Appellee. **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brenda M. Finney brought suit against Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, to challenge the determination that Finney was not disabled from March 14, 2006 through December 14, 2010, for purposes of the Social Security Act ("SSA"). In this appeal, Finney contends that the district court erred in denying her request for a remand to the administrative law judge ("ALJ") in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). For the reasons that follow, we affirm the judgment.

I.

A.

On July 10, 2008, at the age of fifty-two, Finney first complained of right knee pain to her primary care physician, Terry G. Daniel, M.D. Although her knee popped when she walked and hurt when she went up and down stairs, Finney had not taken any medication for the pain. Dr. Daniel indicated that Finney "most likely ha[d] [a] meniscal injury," and he noted that, if the condition did not improve, Finney would "need[] [an] MRI to rule out [a] torn meniscus." Tr. 242.[1]

---

[1] "Tr." refers to the administrative record, while "J.A." refers to the parties' Joint Appendix.

2

In April 2009, Finney again notified Dr. Daniel that she was experiencing right knee pain along with intermittent swelling and popping. An x-ray from July 2008 had revealed no arthritis, and the doctor concluded that Finney may have torn cartilage. He also noted that "[s]he has no insurance and will call me when she is ready for [an] MRI to look for torn cartilage." Tr. 235.

In July 2009, Dorothy Linster, M.D., completed a physical residual functional capacity ("RFC") assessment of Finney. Dr. Linster considered Finney's mental and physical impairments, including her right knee pain, and she determined that Finney was capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing or walking for about six hours per day, sitting for approximately six hours per day, and unrestrictedly pushing or pulling items, including operating hand and foot controls.

Meanwhile, Finney, who had previously worked as a sewing machine operator, had protectively applied for Title II disability insurance benefits and Title XVI supplemental security income on April 13, 2009, based on her various medical impairments including her right knee pain. Her date last insured was June 30, 2010, and she alleged a disability onset date of March 14, 2006. After conducting a hearing, the ALJ

3

determined that Finney was not disabled from March 14, 2006 through December 14, 2010 ("the 2010 decision").

In reaching this decision, the ALJ followed the standard five-step sequential evaluation process for making disability determinations. See 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). The ALJ noted that Finney satisfied the first requirement for disability benefits, as she had not engaged in substantial gainful activity since prior to March 14, 2006. At step two, the ALJ determined that Finney's "residual right knee pain secondary to a possible meniscal injury" was severe, as were several of her other impairments. Tr. 16. The ALJ concluded at step three that Finney did not have an impairment that met or equaled one of the listed impairments in the SSA.

Before reaching step four, the ALJ assessed Finney's RFC and concluded that Finney was able to perform a limited range of medium work. Consequently, at step four, the ALJ determined that Finney was capable of performing her past relevant work as a sewing machine operator, which required only light exertion. The ALJ decided, in the alternative, that Finney was capable of performing other jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Finney was not disabled during the relevant period. The Appeals Council denied Finney's subsequent request for review on April 29, 2011, and the decision became final.

B.

1.

After the 2010 decision, Finney continued to feel pain in her right knee. On April 1, 2011, Joseph Guarino, M.D., examined Finney's knee and noted that Finney "has had problems with her knee for a period of three years. She has had pain and stiffness in the knee as well as swelling." J.A. 143. He also observed that Finney "walks with an antalgic gait" and that "she is tender over the medial joint line of the right knee." J.A. 144–45. Dr. Guarino determined that Finney's impairments did not limit her ability to sit but that she would have difficulty with prolonged periods of standing and moving. He also indicated that Finney would be able to occasionally lift up to twenty-five pounds and frequently lift up to ten pounds.

2.

On September 1, 2011, Finney finally received an MRI of her right knee. Finney's scan was based on "posteromedial right knee pain over the past 2 years." J.A. 147. The MRI report describes, among other things, an "[i]ndistinct abnormal signal in the posterior horn of the medial meniscus [that] extends to the inferior meniscal surface," which, the report notes, was "suspicious for a small grade 3 tear." Id.

3.

Rodney Mortenson, M.D., an orthopedic specialist, examined Finney's right knee on September 15, 2011, and continued to treat Finney through August 3, 2012. During the initial examination, Dr. Mortenson noted that Finney had been experiencing right knee pain for years but that it had been "manageable until 2 weeks ago when suddenly the pain increased and now is localized along the medial joint line." J.A. 181. The doctor's examination revealed "[a]cute tenderness along the mid third and posterior third of the medial joint line," as well as pain along the medial joint line upon rotation of Finney's right hip. J.A. 182. Accordingly, Dr. Mortenson concluded that Finney had "osteoarthritis of [the] right knee." Id. He also analyzed the recent MRI report and determined that it "shows what can be interpreted as a grade 3 in distinct [sic] tear of the posterior horn medial meniscus." Id. Although the MRI was "inconclusive," the doctor reported that, "clinically[,] [Finney] has a tear of the meniscus." Id.

Dr. Mortenson performed an arthroscopic exploration of Finney's right knee on October 10, 2011. During this procedure, he confirmed that Finney indeed had a "tear of the posterior horn of the medial meniscus[,] which was nondisplaced, but frayed and ragged." J.A. 177. He debrided and smoothed the medial meniscus with a shaver and removed all debris.

6

After the debridement procedure, Dr. Mortenson continued to monitor Finney's right knee condition, which "finally calmed down" on June 25, 2012. J.A. 159. At this point, however, Finney reported that she had begun to experience pain in her left knee. Finney underwent an arthroscopic examination and debridement of her left knee, just as she had received on the right, and Dr. Mortenson confirmed that Finney had also torn the posterior horn of the medial meniscus in her left knee. Dr. Mortenson's treatment notes conclude with Finney's follow-up appointment on August 3, 2012, when he continued to report that Finney had osteoarthritis of the right knee.

C.

After the ALJ found that Finney was not disabled from March 14, 2006 through December 14, 2010, Finney protectively filed a second application for Title XVI supplemental security income on December 22, 2010, alleging a disability onset date of December 15, 2010, the day after the 2010 decision. Finney again based her application on many mental and physical impairments, including the pain in both of her knees. A second ALJ ultimately issued a decision fully favorable to Finney, finding that Finney was disabled under the SSA from December 15, 2010 through February 27, 2013 ("the 2013 decision").

In reaching this decision, the ALJ reviewed Finney's medical records, including the three pieces of medical evidence

7

from 2011 and 2012: (1) Dr. Guarino's report, (2) the MRI report, and (3) Dr. Mortenson's treatment notes. Following the standard five-step process, the ALJ determined that Finney had several severe impairments, including "osteoarthritis of the bilateral knees," J.A. 116, and she found, unlike the prior ALJ, that Finney had the RFC to perform no more than light work, with some limitations. At step four, the ALJ determined that Finney was unable to perform any past relevant work. The ALJ based this conclusion on somewhat perplexing reasoning: after finding that Finney was able to perform a partial range of <u>light</u> work, the ALJ noted that Finney's testimony indicated that her past work as a sewing machine operator was actually sedentary work, and the ALJ then concluded that, because Finney's RFC "limits her to less than the full range of unskilled, <u>sedentary</u> work, the undersigned finds that the claimant is unable to perform her past relevant work."[2]  J.A. 119 (emphasis added).

The ALJ thus proceeded to step five to assess whether Finney could perform other work that exists in the national economy.  At this step, the ALJ applied Rule 202.06 of the Medical-Vocational Grid Rules, which directed a finding of

_____

[2] This apparent error is further underscored by the ALJ's prior statement in the introduction of the 2013 decision that "the undersigned finds that the claimant's physical impairments limit her to the performance of work at the <u>light</u> exertional level."  J.A. 114 (emphasis added).

"disabled" based on Finney's age, education, work experience, and RFC. J.A. 120. Accordingly, the ALJ concluded that Finney had been disabled since December 15, 2010, the onset date alleged in Finney's second application.

## D.

While Finney was pursuing her renewed administrative claim, she filed this suit against the Acting Commissioner of the Social Security Administration in federal district court on June 21, 2011, to challenge the 2010 decision. Finney later filed a motion to remand to the ALJ for consideration of new evidence, attaching the three pieces of supplemental medical evidence from 2011 and 2012 as exhibits and submitting a copy of the 2013 decision. The district court resolved cross-motions for judgment on the pleadings in the Commissioner's favor, affirmed the 2010 decision as to Finney's disability status from 2006 to 2010, and dismissed Finney's motion to remand as moot. The district court denied Finney's subsequent Rule 59(e) motion to alter or amend the judgment, and Finney filed a timely notice of appeal.

## II.

In this appeal, Finney asserts error in the district court's denial of her request for a remand of the 2010 decision

9

in light of the three supplemental pieces of medical evidence from 2011 and 2012.

A.

Sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Accordingly, we have recognized four requirements that a claimant seeking a sentence six remand must satisfy. First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits and is not merely cumulative of evidence already on the record. Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985) (citing Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983)). Second, the claimant must establish that the evidence is material, in that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). Third, the claimant must show that good cause exists for her failure to present the evidence earlier. Id. And fourth, the claimant must present to the reviewing court "'at least a general showing of the nature' of the new evidence." Id. (quoting King, 599

10

F.2d at 599). In assessing whether the claimant has made these requisite showings, however, "[t]his Court does not find facts or try the case de novo." King, 599 F.2d at 599 (citing Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971)).

For the reasons stated below, we hold that Finney has failed to show that the supplemental evidence is material and has therefore failed to establish that remand to the ALJ is warranted. Accordingly, we affirm the judgment, and we need not consider whether Finney satisfied the other requirements for remand.

B.

The materiality prong requires a claimant to show that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." Borders, 777 F.2d at 955 (quoting King, 599 F.2d at 599); see also Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."). In this case, despite Finney's insistence that the new evidence creates a "reasonable possibility that the first ALJ would have found Finney's RFC limited to a restricted range of light work," Finney fails to explain how this shift in the ALJ's RFC assessment would change the ultimate outcome of the ALJ's decision. See Appellant's Br. 25–27. As Finney bears the

11

burden of demonstrating that the supplemental evidence is material, she has not made an adequate showing to merit a sentence six remand.

To be sure, if the first ALJ had been able to consider Finney's additional medical evidence—assuming arguendo that this evidence is new and relevant to the time that Finney first applied for benefits—the ALJ would likely have assessed Finney's RFC differently. That is, the new evidence would likely have led the first ALJ to determine that Finney could have performed only a limited range of light work. Based on the medical evidence available at the time, the first ALJ found that Finney was capable of performing medium work, which involves lifting up to fifty pounds at a time and frequently lifting twenty-five pounds, see 20 C.F.R. § 404.1567(c), but Dr. Guarino's 2011 examination notes suggest that Finney's physical impairments were more functionally limiting than the first ALJ's determination had reflected. In particular, Dr. Guarino indicated that Finney would be able to occasionally lift no more than twenty to twenty-five pounds and frequently lift up to ten pounds. These findings closely track the standard physical exertion requirements for light work, not medium work. See § 404.1567(b). Dr. Guarino also reported that Finney had no limitation with respect to sitting but that she would have difficulty standing and moving for prolonged periods.

12

Accordingly, if the first ALJ could have reviewed the new medical evidence—provided that this evidence is relevant to the time period at issue—she likely would have found that Finney was capable of performing no more than a limited range of light work. Indeed, the second ALJ made this determination in the 2013 decision with respect to the 2010 to 2013 time period in light of Finney's 2011 and 2012 medical records.

Nevertheless, we are persuaded that, upon considering the new evidence, the first ALJ would most assuredly have reached the same outcome as she did originally, concluding that Finney was capable of performing her past relevant work and that she was therefore not disabled from 2006 to 2010. Based on the testimony of a vocational expert, the first ALJ recognized that Finney's previous position as a sewing machine operator required only light exertion, and no new medical evidence produced after the 2010 decision suggests otherwise.[3] Thus, even if the first

---

[3] In fact, based on Finney's testimony, the second ALJ determined that Finney's past work was actually sedentary, which requires less exertion than light work. If the first ALJ were to find the same on remand, she would be even more likely to conclude that Finney—who likely had an RFC to perform a limited range of light work, according to the new medical evidence—could have performed her past sedentary work. See § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."); see also J.A. 145 (reporting that Finney had no such limitations).

13

ALJ were to determine that Finney could perform no more than a limited range of light work, the ALJ would surely still have concluded that Finney could perform the light work required of a sewing machine operator. Nothing in the record indicates that Finney's particular functional limitations prevented her from performing this work. Accordingly, Finney has not shown that the additional medical evidence is material, as she has not demonstrated that the 2010 decision might reasonably have been different had the evidence been before that ALJ.

Finally, Finney's argument that the new medical evidence might have led the first ALJ to find her disabled under Rule 202.06 of the Medical-Vocational Grid Rules is similarly unavailing. When an ALJ reaches the final step of the standard five-step analysis, after determining that a claimant cannot perform past relevant work, the ALJ must consider the Grid Rules to determine whether the claimant could successfully adjust to work that she had not previously performed. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. Under these Grid Rules, a claimant of "advanced age" (fifty-five or older), who can no longer perform past relevant work, has little or no relevant work experience, and is functionally restricted to light work, is considered disabled. Id. Indeed, the second ALJ applied the Grid Rules to find that Finney was disabled from 2010 to 2013, as Finney had

14

reached advanced age at that time and the ALJ determined that she could no longer perform her past relevant work.

We conclude, however, that there is no reasonable possibility that the first ALJ, on remand, would reach step five, so the Grid Rules would never come into play. As discussed above, when presented with the new evidence, the ALJ would plainly still have found that Finney could perform her past relevant work as a sewing machine operator at step four, thereby completing the analysis and rendering application of the Grid Rules irrelevant. See § 416.920(a)(4)(iv); Tr. 16 ("If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step."). Accordingly, Finney has failed to establish that the medical evidence from 2011 and 2012 is material to the determination of her disability status from 2006 to 2010, so remand for reconsideration of the 2010 decision is not warranted on this basis.

III.

For the foregoing reasons, the judgment is

AFFIRMED.

15

KING, Circuit Judge, dissenting:

I am unable to agree with my fellow panelists, and therefore write separately in dissent. As explained below, the "supplemental medical evidence" submitted by Mrs. Finney — consisting of Dr. Guarino's report, two MRI reports, and Dr. Mortenson's treatment notes — constitutes new and material evidence. Because Finney has shown good cause for failing to incorporate that new evidence in the record in the prior proceeding, I would vacate the judgment and have this matter remanded to the Commissioner under the sixth sentence of 42 U.S.C. § 405(g) (hereinafter "Sentence six").

I.

Pursuant to Sentence six, a district court that is reviewing a denial of Social Security disability benefits should remand the proceeding to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The supplemental medical evidence that Finney submitted to the district court plainly qualifies as "new evidence" under Sentence six. None of the evidence in the record leading to the 2010 decision (the "prior proceeding") is remotely comparable to the new evidence. Finney also readily satisfies the "good cause" requirement for a

16

Sentence six remand, as the deadline for submitting evidence to the Commissioner had already expired when the new evidence came into existence.

Whether the new evidence is material to Finney's Social Security benefits claim in the prior proceeding is a somewhat closer call. The district court, in ruling that Finney's new evidence was not material, reasoned that almost none of it related to the condition of Finney's knees during the period adjudicated in the prior proceeding — that is, March 14, 2006, through December 14, 2010. Although Sentence six does not explicitly require that new evidence must relate to the period previously considered by the ALJ, such a requirement is implicit in the materiality prong. See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991); see also Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (explaining that, to warrant a Sentence six remand, the new evidence must "relate to the time period for which benefits were denied," and not be merely probative "of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition").

The requirement that the new evidence be relevant to the claimant's condition during the period adjudicated in the prior proceeding does not, however, mean that the new evidence must have been created during that period, or even — as the district

17

court erroneously assumed — that the new evidence must expressly refer to the claimant's condition during that period. Our recent decision in Bird v. Commissioner of Social Security is particularly instructive on that point. See 699 F.3d 337, 340-41 (4th Cir. 2012). The ALJ in Bird denied the claimant's application for disability insurance benefits ("DIB"), but failed to consider medical evidence postdating the claimant's so-called "date last insured" ("DLI"). Id. at 342. We ruled that the ALJ's failure to consider Bird's post-DLI medical evidence was erroneous. Id.

Our Bird decision rested on the commonsense principle that "[m]edical evaluations made after a claimant's insured status has expired . . . may be relevant to prove a disability arising before the claimant's DLI." See 699 F.3d at 341. Evidence of disability that comes into existence after a claimant's DLI may warrant an inference that the claimant became disabled after the DLI, but it could also justify the inference "of a possible earlier and progressive degeneration." Id. at 340 (internal quotation marks omitted). Thus, as Judge Keenan explained in Bird, the ALJ's duty to consider all relevant evidence includes the duty to give "retrospective consideration" to evidence created after a claimant's DLI, "when the record is not so persuasive as to rule out any linkage of the final condition of

the claimant with his earlier symptoms." Id. (internal quotation marks omitted).

Although the procedural posture of this proceeding differs from Bird, our observations therein about retrospective relevance are applicable in this context. As explained in Bird, a DIB claimant must establish that she became disabled before her DLI. See 699 F.3d at 340. The DLI thus delineates the end of the "relevant period" for Social Security proceedings where the claimant is seeking only DIB and her insured status expires before the ALJ issues a decision. See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014). In matters such as this, the date of the ALJ's decision, rather than the DLI, marks the end of the relevant period. Whatever event terminates the relevant period, the basic principle is the same: the relevance of a claimant's medical records turns not on when those records were created, but on whether they are probative of the claimant's condition during the relevant period.

A reasonable ALJ could readily infer that the new evidence reflects Finney's condition not only in 2011 and 2012 (when that evidence was created), but also in 2010, and perhaps earlier. The three most significant pieces of new evidence — the Guarino report, the September 2011 right knee MRI, and the notes from Finney's right knee surgery — were all created within the year immediately following the 2010 decision. Indeed, the new

evidence was generally created closer in time to the 2010 decision than other evidence in the record of the prior proceeding. Moreover, the new evidence fills significant evidentiary gaps in the administrative record. For example, the new evidence includes the first expert opinion by an examining or treating physician of Finney's physical functional capacity, it includes the first MRI reports, and it includes the first expert statement from a treating orthopedic specialist regarding Finney's knee problems. As the majority opinion all but concedes, the new evidence likely would have impacted the ALJ's assessment of Finney's residual functional capacity ("RFC"). See ante at 12 ("Dr. Guarino's 2011 examination notes suggest that Finney's physical impairments were more functionally limiting than the first ALJ's determination had reflected.").

To its credit, the majority eschews the district court's flawed reasoning regarding the retrospective relevance of Finney's new evidence. Instead, the majority concludes that any change in Finney's RFC to account for the new evidence would have no impact on the ALJ's conclusion that she could yet perform her past relevant work as a sewing machine operator. Indeed, the majority emphasizes that even if the first ALJ had restricted Finney to "light" work, as did the second ALJ, such a restriction would not preclude Finney from working as a sewing machine operator. See ante at 12-14.

But Finney's new evidence could also have impacted her RFC in ways other than the light work restriction. The second ALJ — with the benefit of the new evidence — included several functional limitations in her assessment of Finney's RFC that were not made in the first ALJ's RFC assessment. Of note, the second ALJ found, based on the new evidence, that Finney must be allowed to alternate between sitting and standing; could frequently, but not continuously, operate foot controls with her feet; and must "avoid concentrated exposure to vibrations and workplace hazards, such as operational control of moving machinery." J.A. 117. In my view, there is a substantial possibility that those limitations would prevent any person from working full time as a sewing machine operator. Indeed, the second ALJ reached that very conclusion.* There is also a reasonable possibility that, given a more restrictive RFC assessment, Finney would have been found disabled at step five, under the Medical-Vocational Guidelines, see 20 C.F.R. pt. 404,

---

\* Although it does not question the second ALJ's ultimate conclusion that Finney could not do her past relevant work as a sewing machine operator, the majority criticizes the ALJ's reasoning on that point as "somewhat perplexing." See ante at 8 & n.2. Whether, as the majority suggests, the second ALJ misstated Finney's RFC as including only sedentary rather than light work is beside the point. The other limitations in Finney's RFC, not its broad classification as "light" or "sedentary," are what rendered her unable to work as a sewing machine operator.

subpt. P, app. 2, or based on the absence of a significant number of jobs accommodating her RFC.

Finally, the Commissioner's contention that the new evidence is of "questionable" potential weight is simply an unsound reason for denying a Sentence six remand. See Br. of Appellee 19. A reviewing court, in assessing the materiality of new evidence, must take care not to assume "the role of the fact-finder" by "[a]ssessing the probative value of conflicting evidence." See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011). It is the duty of the ALJ, not a reviewing court, to find facts and resolve evidentiary conflicts in Social Security proceedings. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Put simply, Sentence six does not create an exception to that bedrock principle. Sentence six simply reinforces that principle, ensuring that reviewing courts do not weigh new evidence, but simply assess whether such evidence is material. In these circumstances, and consistent with the foregoing principles, the new evidence was material.

## II.

In sum, a proper evaluation of Finney's new evidence could well have led the first ALJ to materially modify her assessment of Finney's RFC. It is therefore clear that — assessed de novo

22

— the district court erred in ruling that the new evidence was not material.  Because Finney has unquestionably shown good cause for not submitting the new evidence in the prior proceeding, the judgment should be vacated and the matter remanded to the Commissioner.

I respectfully dissent.