Ronald RICHARDS, Plaintiff,

v.

David MATHEWS, Secretary of Health,
Education and Welfare, Defendant.

Civ. No. 75–401.

United States District Court,
W. D. New York.

Jan. 14, 1977.

Paul William Beltz, P. C., Buffalo, N. Y., for plaintiff; Robert B. Nichols, Buffalo, N. Y., of counsel.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y., for defendant; Asst. U. S. Atty. Roger P. Williams, Buffalo, N. Y., of counsel.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff commenced this action pursuant to Section 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of an administrative decision of the Secretary of Health, Education & Welfare ("the Secretary") which denied his claim for disability benefits. Defendant has moved for summary judgment on the basis of the pleadings and the administrative transcript (as required by law, attached to and incorporated by reference in the answer). Only the affidavit of an attorney associated with plaintiff's attorney is submitted in opposition and even that document admits that plaintiff "does not have too much dispute with the factual situation as set forth" by defendant.

On March 13, 1973 plaintiff (sub. nom. Ronald J. Richards, Soc. Sec. No. 106–28–7836) filed an application for a period of disability and for disability insurance benefits. The impairment or disability was set forth as "back injury". The Social Security Administration denied this application initially November 30, 1973 and on reconsideration March 13, 1974. At plaintiff's request, a hearing was held July 16, 1974. The Administrative Law Judge denied plaintiff's application in a decision rendered January 17, 1975 and this determination became the final decision of the Secretary when it was affirmed by the Appeals Council July 28, 1975.

Plaintiff, a man of 40 years, alleges that he has been unable to engage in any substantial gainful employment since July 17, 1972 due to a back injury which he sustained in a fall which occurred January 10, 1970 in the course of his work as a railroad brakeman.[1] On April 12, 1971, Dr. Dogan M. Perese, a neurosurgeon who had treated the plaintiff since 1962, examined plaintiff and concluded that there was evidence of degenerative cervical and lumbar disc herniation. Plaintiff was hospitalized the same day. Dr. Perese concluded in a follow-up examination conducted May 28, 1971 that plaintiff then was capable of returning to his usual work.

Plaintiff, complaining of headaches and neck, shoulder and lumbosacral pain, was again examined by Dr. Perese March 17, 1972. The physician concluded that evi-

---

1. In his Medical History and Disability Report (Form SSA–401) dated March 13, 1973 plaintiff said that his injury had first bothered him "1/10/70" and had finally prevented him from working "2/×/73" because he was having pains in his back and could not do his job in this condition. In the interim between the two dates, plaintiff said, he had been working eight hours a day but had had to cut down on his hours of work to about six or five hours a day and had had to go home from work on several occasions. (Exhibit 13.)

A further SSA–401 dated December 10, 1973 shows "6/72" as the date plaintiff's injury first bothered him and "2/20/73" as the day when plaintiff's injury finally prevented him from working. Plaintiff said that he had had a spinal operation September 7, 1972 and had been confined until September 22, 1972. He had been in the hospital since August 3, 1972. On applying for his old job he was unable to pass the physical examination. Relative to the interim between June of 1972 and February 20, 1973 plaintiff said that he lost a lot of time from work due to his injury. He worked as a railroad brakeman as recently as June of 1972. (Exhibit 14.)

Plaintiff's railroad earnings were $2,636.32 in 1971 and $3,480.23 in 1972 as opposed to $7,800.00 in 1970 and an average of $6,418.75 for the years 1966 through 1970. (Exhibit 11.)

dence of lumbar and cervical root irritation continued and suggested that plaintiff restrict his activities.

On March 30, 1972 plaintiff was examined by Dr. Benjamin E. Obletz, an orthopedic surgeon, at his employer's request. Based on a physical examination of the plaintiff and on his medical history, Dr. Obletz concluded that he had a partial disability in the lumbar spine but was capable of doing selective work.

After being again examined by Dr. Perese June 30, 1972, plaintiff was hospitalized with a diagnosis of lumbar neuropathy. Subsequent to his discharge in August, Dr. Perese concluded that plaintiff suffered from a lumbar disc herniation.

Plaintiff was again hospitalized in September of 1972 and exploratory and remedial surgery was performed. Plaintiff made a satisfactory recovery from this operation. In December of 1972 plaintiff complained of numbness of the thumb and index fingers as well as of pain in the lumbar region after he had been hunting. Dr. Perese noted that it was not unusual to have periodic finger numbness due to irritation of the nerve root in the cervical spine and no treatment was recommended.

Dr. Perese next examined plaintiff January 31, 1973 and it was his opinion at that time that plaintiff could return to work within two weeks. Plaintiff attempted to do so but, following a physical examination, his employer refused to rehire him.[2] He claims that his subsequent attempts to secure a job proved fruitless and that potential employers would not hire him due to his partial disability.

In March of 1973 plaintiff told Dr. Perese that his only complaint was of "slight discomfort" in the lumbar region. On July 25, 1973 plaintiff told the physician that he was feeling well and had no pain or discomfort. On September 26, 1973 plaintiff told Dr. John A. Repicci, an orthopedic surgeon, that he had had occasional lumbar pain with radiation into his left leg and frequent episodes of neck discomfort; on that day, however, he was reasonably comfortable and without any particular distress. On October 29, 1973 plaintiff related to Dr. Perese that he had "some discomfort" in the lumbar region, especially at night when he had difficulty in sleeping. Dr. Perese opined that plaintiff was capable of doing light to moderately heavy work. Dr. Repicci concluded that plaintiff had a partial disability of a mild degree and then was employable but noted that he would have some difficulty in extremely heavy work requiring excessive bending. Dr. Repicci suggested that plaintiff not lift more than 35 pounds. Neither doctor noted anything objectively wrong with plaintiff. (Exhibits 27 and 28.) Dr. Joseph M. Dziob, the plant doctor at Bethlehem Steel Corporation and a general surgeon and specialist in occupational medicine, indicated in a note dated December 5, 1973 that plaintiff had undergone surgery for a degenerative disc disease and was able to work but could not lift heavy objects or run or jump or continuously stoop or bend. He concluded that plaintiff was partially and permanently disabled. Dr. Perese concurred with these conclusions and reported January 19, 1974 that the plaintiff was capable of lifting and carrying 25 pounds, could bend and stoop about ten times per hour and could run and jump to a moderate degree. Although requested, Dr. Perese set forth no results of any myelogram showing the ruptured cervical disc claimed by plaintiff and no physical findings showing spinal motion defects. He said that there was no present symptomatology referable to cervical spine pathology and that plaintiff's prognosis was fair. (Exhibit 29.) Plaintiff complained to Dr. Perese February 27, 1974 of "recurrent attacks of neck and shoulder pain and pain in the lumbar region" and the physician noted a moderate degree of muscle spasm in the cervical and lumbar areas

2. There is some indication in Exhibit 39 that some part of the deteriorated attitude of plaintiff's employer towards his re-employment can be attributed to a lawsuit commenced by plaintiff against the employer to recover for plaintiff's work-oriented injuries, at least to the extent that the employer was advised not to make any statements as to plaintiff's condition and employability.

and concluded that there still was a showing of evidence of nerve root irritation in plaintiff's cervical and lumbar regions and concluded that plaintiff could do light work but should restrict his activities. (Exhibit 36.) Plaintiff conceded at the hearing that he is only partially disabled and is capable of performing restrictive work activities.[3]

The scope of judicial review of the Secretary's decision is limited. *Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640 (2d Cir. 1968). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides that the factual findings of the Secretary, if supported by substantial evidence, are conclusive. The issue then before this Court is whether the decision of the Secretary denying plaintiff's claim for disability benefits is supported by substantial evidence on the record as a whole. *Fuerst v. Secretary of Health, Education and Welfare,* 354 F.Supp.

185 (S.D.N.Y.1973). The Supreme Court has construed substantial evidence to be "more than a mere scintilla" and to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Section 223(d)(2)(A) of the Act, 42 U.S.C. § 423(d)(2)(A), provides that an individual is disabled only if his physical or mental impairment or impairments are of such severity that he cannot, taking into consideration his age, education and work experience, engage in any kind of substantial gainful work which exists anywhere in the national economy despite the absence of a specific job vacancy for such individual or whether such individual would be hired.[4]

---

3. Following plaintiff's request for reconsideration of the initial disallowance of plaintiff's application plaintiff told the disability examiner by telephone that he had constant headaches and pain in his neck, that a myelogram in September of 1972 had revealed a neck disc problem which was "annoying", that Dr. Perese recommended a "discogram" which plaintiff was declining to have performed until absolutely necessary because of attendant pain, that he takes pills for pain and to sleep, that his right hip and right leg "hurt", that in February of 1973 Dr. Perese wanted plaintiff to try working but that a subsequent examination by Dr. Obletz resulted in a finding that plaintiff could not do his regular work, that plaintiff was to do no running or jumping or climbing or forward bending or stooping or lifting more than 35 pounds and that he was unable also to work as a construction carpenter which had been his sometime occupation. (Exhibit 17.) In a subsequent telephone conversation with the examiner plaintiff said that he still had pain and could not work. In a further telephone call the examiner was told by the plaintiff that the latter still had a lot of neck pain and headaches caused by the neck disc problem, that he had been taking medicine to help him sleep, that he had pain after sitting in an automobile for about a half hour, that he had lower back pain and stiffness and thought he had arthritis and that he did not feel that he could return to work. (Exhibit 20.)

At the hearing in Buffalo July 16, 1974 plaintiff adduced certain exhibits, including the report of Dr. Perese's February 27, 1974 examination of the plaintiff, and testimony by plaintiff. As a preamble, his attorney stated "basi-

cally the outline of our case" as comprising a showing of partial disability via the medical reports and the disinclination of putative employers to engage plaintiff's services because of the injury with resultant limited restriction of plaintiff's movements. Plaintiff detailed episodes of his being rejected for work and set forth for the Administrative Law Judge what the duties of a railroad brakeman entailed. He told the judge of jobs he had had in a gasoline service station, in a tree trimming and razing business, as a diesel generator man in the military service where he had attended automotive school. He said that he was "a little mechanically inclined". He had had his own business of remodelling and putting siding on structures which business was his "trade" and had been pursued by him for twelve years or more until his back "got bad" again. Significantly, plaintiff said nothing of pain to the judge and what there is as to that facet of plaintiff's position comes through the exhibits.

4. The obeisance to what appears to have been offhandedly inserted in Circuit Judge Brown's opinion in *Butler v. Flemming,* 288 F.2d 591, 595 (5th Cir. 1961), to the effect that the substantial gainful work must exist for the applicant "in the general area in which he lives" appears, with all respect, undue. *See, Henninger v. Celebrezze,* 349 F.2d 808, 819 (6th Cir. 1965), and *Ratliff v. Celebrezze,* 338 F.2d 978, 983 (6th Cir. 1964). Section 223(d)(2) of the Act, 42 U.S.C. § 423(d)(2), could hardly speak more clearly to the contrary in defining one as disabled for benefits purposes if "not only unable to do his previous work but cannot * * * engage in any other kind of substan-

The four elements of proof to be considered interrelatedly in determining whether a claimant is disabled within the meaning of the Act are (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, and (4) the claimant's age, education and employment history. *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972); *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962).

■ I find that there is substantial evidence in the record as a whole to support the Secretary's factual findings and his decision to deny a period of disability and disability benefits to plaintiff. The doctors who have examined the plaintiff all agree that he is only partially disabled and is able to work, albeit in a limited capacity. Plaintiff admitted at the hearing that he is only partially disabled. His physical impairment, in the context of his age, education and work experience, does not prevent him from engaging in any substantial gainful employment. He consequently is not disabled within the meaning of Section 223(d)(2)(A).

■ The thrust of plaintiff's argument at the hearing was that he has been unable to secure work because of the reluctance of potential employers to hire a partially disabled individual. Plaintiff contends that this demonstrates that he is disabled and entitles him to disability benefits. Section 223(d)(2)(A) provides, however, that a claimant's difficulty in securing employment should not be taken into account in determining whether he is disabled within the meaning of the Act. There is no requirement that a specific job opening be found available before denying a claimant disability benefits. *Poore v. Mathews,* 419 F.Supp. 142 (D.Neb.1976).

Plaintiff cites *Ber v. Celebrezze,* 332 F.2d 293 (2d Cir. 1964), *Ratliff v. Celebrezze,* 338 F.2d 978 (6th Cir. 1964), *Varnado v. Flemming,* 295 F.2d 693 (5th Cir. 1961), *Henninger v. Celebrezze,* 349 F.2d 808 (6th Cir.

1965), *Celebrezze v. Warren,* 339 F.2d 833 (10th Cir. 1964), *Lippert v. Ribicoff,* 215 F.Supp. 28 (N.D.Cal.1963), *Bowen v. Celebrezze,* 250 F.Supp. 46 (W.D.La.1963), *Randall v. Flemming,* 192 F.Supp. 111 (W.D. Mich.1961), *Lightcap v. Celebrezze,* 214 F.Supp. 209 (W.D.Pa.1962), and *Clemochefsky v. Celebrezze,* 222 F.Supp. 73 (M.D.Pa. 1963), as bases for my overturning the Secretary's decision and allowing plaintiff a period of disability and disability benefits. I have read each of the cited cases and, while most of them present situations wherein the District Courts or the Circuit Courts of Appeal have decided in favor of the individual seeking disability benefits, there is little in them that leads me to do other than uphold the Secretary's instant determination. Where the Secretary has said that the applicant for disability benefits could do work other than what he or she had been doing but had not specified what that other work could be it has been held that the Secretary had not carried his burden in showing what such other work could be. Where there have been objective findings of an impairment or impairments and the applicant has tenably adduced evidence of work-restricting pain, it has been held that such pain could be disabling and that the Secretary had the choice of showing medically that such level of pain was not present. The omission to particularize other substantial gainful activity when the evidence showed conclusively that the applicant's prior work or activity could not be pursued has been held fatal to the Secretary's disallowance of benefits. See, *Rinaldi v. Ribicoff,* 305 F.2d 548 (2d Cir. 1962), *Pollak v. Ribicoff,* 300 F.2d 674 (2d Cir. 1962), and *Kerner v. Flemming,* 283 F.2d 916 (2d Cir. 1960).

■ *Randall v. Flemming,* 192 F.Supp. 111, 127–8 (W.D.Mich.1961), properly delineates the plaintiff-applicant's burden as only requiring him "to establish that he is incapable of carrying on any type of substantial gainful activity for which he is qualified by education, training, and experience". Some

tial gainful work which exists in the national economy, *regardless of whether such work ex-*

*ists in the immediate area in which he lives* * * *."* (Emphasis supplied.)

holdings go further, sometimes alluding to the remedial nature of the legislation in point, and declare that the plaintiff-applicant need only show that he cannot do that which he primarily had been doing and that such showing then shifts the evidentiary burden to the defendant Secretary. *Randall* does, however, set forth the controlling criterion based upon all of the evidence before the Secretary.

In addition, there is no blanket requirement that a vocational expert appear to supply particularized proof of plaintiff's employability. *McLamore v. Weinberger,* 538 F.2d 572 (4th Cir. 1976). The conclusion that plaintiff was employable and could engage in light jobs, a number of which were specified, required no substantiation by a vocational expert in the present case. The Secretary met the substantial evidence test without such testimony.

It is therefore,

ORDERED that defendant's motion for summary judgment is granted.