**Hanna MILES, Plaintiff-Appellant,**

v.

**Patricia HARRIS, Secretary of Health and Human Services, Defendant-Appellee.**

No. 627, Docket 80–6186.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1981.

Decided March 24, 1981.

Michael P. Daly, Syracuse, N. Y. (Onondaga Neighborhood Legal Services, Inc., Syracuse, N. Y., of counsel), for plaintiff-appellant.

Nancy S. Jones, Asst. U. S. Atty., N. D. New York, Syracuse, N. Y. (George H. Lowe, U. S. Atty., N. D. New York, Syracuse, N. Y., of counsel), for defendant-appellee.

Before KAUFMAN, OAKES and MES-KILL, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Hanna Miles, who has a long history of lower back and leg pain, first applied for disability and disability insurance benefits in May 1974. The Social Security Administration (SSA) granted the application, and awarded benefits with an onset date of March 1974. In November 1977, however, the SSA found Miles no longer disabled and terminated her eligibility. Mrs. Miles challenges that decision.

Following the termination, an Administrative Law Judge (ALJ) conducted a hearing *de novo* to determine Miles's eligibility. Miles testified about her condition, her part-time employment as a waitress, and the pain she constantly faced. A vocational expert testified that, based on Miles's condition, age, educational background, work experience, and residual transferable skills, there was substantial gainful work she could perform.

The ALJ also had physicians' reports and hospital records before him. The medical evidence revealed that Mrs. Miles first sought treatment for her back problems in 1970 and was hospitalized for seven weeks in 1972. Her physician, Dr. Donald Delahanty, ordered her hospitalized in 1974 on three occasions. On the first, in March, she was diagnosed as having a herniated disc, and an operative procedure called a laminectomy was performed to remove the disc. During the second, in October, a myelogram revealed no abnormalities. In November, Miles underwent another laminectomy. In 1975, Miles was hospitalized once for recurrent discomfort and was diagnosed as having post-laminectomy pain. Dr. Delahanty examined Miles in May 1976 and reported that she still complained of pain and was totally disabled.

In September 1977, however, an examination by Dr. Daniel Elstein, a consultative orthopaedic surgeon, revealed that Miles "stands erect" and has "no measurable calf or thigh atrophy." Dr. Elstein found that she could sit and stand for approximately four hours and that she still had the use of her hands. He also noted in his report that Miles suffered only mild pain and was capable of doing light work.

Mrs. Miles was hospitalized once again in October 1977. In December, Dr. Delahanty reported to the Secretary of Health, Education and Welfare (HEW) (now the Secretary of Health and Human Services) that Mrs. Miles faced several physical restrictions: standing—one hour; walking—one block; sitting—one hour; bending—to a minimal degree; lifting—less than ten pounds; carrying—less than ten pounds. Miles nevertheless started to work again in March 1978 at a local bakery-coffee shop, working four hours a day, two days per week. She continued to work on this limited schedule until December 1978.

On the basis of this evidence, the ALJ found in July 1978 that Miles was not disabled because her physical impairments did not cause severe functional losses or restric-

tions. He discussed Miles's hospital reports, citing the medical findings of Dr. Delahanty and Dr. Elstein, and relying primarily on Dr. Elstein's report for his conclusions. The ALJ recognized that pain is subjective, but noted that continuous pain leaves a "stigmata"—voluntary or involuntary restrictions in the use of the affected body system. Finding no evidence of atrophy or physical deterioration, he discounted her testimony and found that she was not precluded from engaging in all work activities. The ALJ found that substantial gainful employment for Miles existed in the national economy.

Miles petitioned the Appeals Council for review. In evaluating the ALJ's report, the Council examined additional hospital reports and physical therapist's reports which became available in late 1978 and early 1979, after the ALJ's examination of the matter. The Council found that these reports were not sufficient to justify either reopening of the case or overturning the ALJ's decision, which, as a result, became the decision of the Secretary. Miles filed suit in the Northern District of New York in April 1979, and after Magistrate Conan recommended affirmance, Judge Munson granted the Secretary's motion for judgment on the pleadings. We affirm.

■ We find that the Secretary's determination that Mrs. Miles is not eligible for disability and disability insurance benefits is grounded on findings supported by "substantial evidence." 402 U.S.C. § 405(g) (1976); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Dorman v. Harris*, 633 F.2d 1035, 1036 (2d Cir. 1980). In evaluating the medical evidence, the ALJ discussed in detail Miles's hospital records and the reports of Dr. Delahanty and Dr. Elstein. Having outlined the evidence before him, the ALJ satisfied his duty to state his findings of fact and conclusions of law.

In reaching a conclusion as to Miles's alleged disability, the ALJ properly considered objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and her educational background, age, and work experience. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Rejecting Mrs. Miles's subjective claims that her pain was disabling, the ALJ reasonably relied on the objective conclusions of Dr. Elstein and on his own evaluation of Miles's credibility. Notwithstanding the apparent inconsistency between the reports of Dr. Delahanty and that of Dr. Elstein, we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony, as Judge Oakes suggests in his dissenting opinion, *infra*. It is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision. Finally, since other medical reports evaluated by the Appeals Council did not address Miles's previous condition, *see id.* at 232, they are relevant only for determining disability after the date of the ALJ's decision. That issue is not before us in this case.[1]

■ We also reject the contention that a procedural error committed by the ALJ warrants reversal or remand. While the ALJ erred in noting that Miles's part-time job, for which her remuneration was less than $170 per month, constituted "substantial gainful activity," 20 C.F.R. § 404.-1534(b)(2)(iv) (1980), there was "substantial evidence" of the availability of other substantial gainful employment in the vicinity presented at the hearing by the vocational expert. This error, therefore, was harmless.

The judgment is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent.

1. Because Miles's condition deteriorated during 1978 and 1979, she reapplied for disability benefits on May 1, 1979. Her application was denied and is now the subject of another action in the Northern District of New York before Judge MacMahon. The matter was referred to a Magistrate on November 4, 1980, and to date no report has issued. This reapplication only applies for the period *following* the ALJ's decision in July 1978. Thus, the instant appeal deals only with Miles's alleged disability from September 1977—the date of the cessation of eligibility—to July 1978—the date of the ALJ's decision.

Hanna Miles, a woman forty-seven years old at the time of the hearing before the Administrative Law Judge (ALJ), had previously been found disabled, as of March 1974, as the result of a serious back impairment, following surgical intervertebral disc removal. The issue before the ALJ was whether her disability ceased in September 1977, with her last entitlement to Social Security disability benefits in November 1977. Finding against her, the ALJ reached this conclusion, as I read his decision, on the following bases: (1) the ALJ's own medical opinion that "continuous, severe, and intractable pain must, and does, leave its stigmata," in conjunction with his observation of Mrs. Miles at the hearing that she exhibited no such "stigmata"; (2) a consultative orthopedic examination by Dr. Elstein that indicated that the claimant's pain was "mild" and that there was no "severe restriction" on the range of motion of her back; (3) the fact that at the time of the hearing she was working as a short-order cook and cashier at a coffee shop and that this job, in addition to her "daily prescribed exercises of walking," was inconsistent with her allegations of severe and intractable pain. In my view each of these bases either lacks support in the record or is so inconsistent with the weight of the evidence as to require the ALJ at least to elaborate further his reasons for disregarding contrary evidence.

With respect to the first point, the ALJ's medical assumptions as to the "stigmata" of pain are simply not supported by the evidence and constitute an unsubstantiated medical assumption which a lay person is not qualified to make. *See Wilson v. Califano*, 617 F.2d 1050, 1054 (4th Cir. 1980); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). While an administrative factfinder, like any other factfinder, may rely upon his observations in determining credibility, he is not entitled to make assumptions as to what he should expect to see, given a particular set of medical findings, absent medical support therefor, unless the medical assumption he makes is so well established as to permit of judicial notice. That pain produces "stigmata" is not so

well established. The evidence in the record was that Mrs. Miles had a restricted range of motion, a forward list in her posture, difficulty in walking, and a slight limp.

Regarding the observations of the consultant, Dr. Elstein, they were based upon one examination taking an amount of time undisclosed by the record, and are totally inconsistent with numerous, extensive observations made before and after his single examination by the long-time treating physician, Dr. Delahanty. During Dr. Elstein's examination on September 28, 1977, he found straight-leg-raising in the supine position to 90 degrees on the left and 80 degrees on the right, and felt that Mrs. Miles was capable of sitting and standing for four hours, that her pain was mild and her range of motion not restricted. He further noted that she "stands erect." Within a very few days thereafter, however, Mrs. Miles was admitted to the Auburn Memorial Hospital because of severe back pain with sciatic radiation. There she was treated conservatively with bed rest, traction, heat, and ultrasound, and was able eventually to walk using crutches. Dr. Delahanty noted at this time—in total inconsistency with Dr. Elstein's report—that Miles "has a forward list at about 20 degrees," that she "can bend only forward to reach partway to her knees and has severe pain in doing this," and that "[i]n the supine position the straight leg raising test is positive on the right at about 20 degrees and on the left at about 60 degrees causing severe back pain." The importance of these findings on this well-known and generally utilized straight-leg-raising or Lasegue test cannot be overestimated, since along with the claimant's list this test tends objectively to demonstrate a serious back condition. See 1 Lawyers' Medical Cyclopedia §§ 7.10–.11 (1966 & Supp. 1968). The absence of such findings in Dr. Elstein's report and their presence in Dr. Delahanty's is simply unexplained. Dr. Delahanty's report added that leaning to the right and left more than 10 degrees increases her difficulty, that she has "advanced degenera-

tive arthritic changes" of the L5 lumbar space observable by X-ray, and that she has had continuing treatments including two laminectomies—serious back operations used only as a last resort in herniated disc cases. Dr. Delahanty found Mrs. Miles's standing capacity to be one hour, her walking capacity one block, her sitting capacity one hour, and her bending capacity "to minimal degree."

In light of the claimant's past history, the previous finding of disability, and the diagnosis made during the twelve-day stay at the Auburn Memorial Hospital, which occurred within a matter of days after her examination by Dr. Elstein, one has to wonder how the ALJ could conceivably have relied upon Dr. Elstein's report to the exclusion of the other evidence. *See Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) ("[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary"); *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971) ("the opinion of a claimant's treating physician is entitled to great weight, for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time"); *Selig v. Richardson*, 379 F.Supp. 594, 601 (E.D.N.Y.1974) ("once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once . . . , especially where [the treating physician] has treated the claimant over a substantial period of time"). In any event, I do not believe that the ALJ's decision can be accepted without an explanation on his part of the inconsistencies involved here. *See Day v. Weinberger*, 522 F.2d at 1156; *Vitek v. Finch*, 438 F.2d at 1160; *Chiappa v. Secretary of Department of Health, Education and Welfare*, 497 F.Supp. 356, 360 & n.3 (S.D.N.Y.1980).

Finally, on the ALJ's third point, Mrs. Miles' "work-related activities," it is true that she took a part-time job as a short-order cook and cashier at a coffee shop. However, the ALJ did not discuss the facts that this work involved only eight hours per week with a weekly gross of $20, that it was done by Mrs. Miles without the knowledge or approval of her treating physician, Dr. Delahanty, and that after working even this little bit, with freedom to take breaks and sit down, she felt "not too good" and had "very, very severe" pain. To be sure, Mrs. Miles testified that she did a little of her own housework, but this consisted of making breakfast and straightening up her room. She said that she could do housework, laundry, and shopping, but only "when I'm good." As for the ALJ's statement that "her daily prescribed exercises of walking" were inconsistent with her allegations as to pain, the ALJ failed to consider that this was a *prescription* that the doctor hoped Mrs. Miles could work up to; it was not something that she was able to do. In response to the question "[h]ow many blocks can you comfortably walk?" her answer was "[m]aybe a block and a half," an answer which was completely consistent with Dr. Delahanty's finding that at the time of her November hospitalization at Auburn Memorial her capacity for walking was "one block." The ALJ evidently equated the doctor's prescription with her actual physical capacity and this was erroneous.

It is true that the claimant has filed a new application for Social Security benefits, but this application is limited to a period of disability beginning July 31, 1978, and does not cover the period between September 1977 and July 31, 1978. The present case, therefore, has considerable importance. Although there are several other defects in this record, the foregoing will suffice to state my view that, in addition to failing to consider important evidence, the ALJ has simply not given us a rational decision explaining the inconsistencies between his findings and what seems to me the overwhelming weight of the evidence. I think he is required to provide such an explanation, especially in a cessation proceeding as opposed to an initial determination of disability. Accordingly, I would remand to the Secretary for reconsideration and further findings.