David **RUTHERFORD**,
Plaintiff-Appellant,

v.

Richard S. **SCHWEIKER**, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 838, Docket 81–6248.

United States Court of Appeals,
Second Circuit.

Argued April 14, 1982.

Decided Aug. 9, 1982.

Andrew Scherer, Bronx Legal Services Corp., New York City (Linda Breen, New York City, and Harold Menendez, New York City, of counsel), for plaintiff-appellant.

Robert M. Jupiter, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. and Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before KAUFMAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Plaintiff David Rutherford appeals from a judgment of the United States District Court for the Southern District of New York, John M. Cannella, J., affirming a final decision of the Secretary of Health and Human Services terminating Rutherford's entitlement to Supplemental Security Income (SSI) benefits on the ground he was not disabled within the meaning of § 1614(a)(3)(A) of the Social Security Act, as amended, 42 U.S.C. § 1382c(a)(3)(A).

## BACKGROUND

In 1975, plaintiff, a forty-four-year-old male, applied for disability benefits, and his application was processed under both Subchapter II of the Social Security Act, 42 U.S.C. §§ 401–431, and Subchapter XVI, 42 U.S.C. §§ 1381–1383. The definitions of disability under both Subchapters are substantially the same. *Rivera v. Harris*, 623 F.2d 212, 216 n.4 (2 Cir. 1980). Plaintiff's claim under Subchapter XVI initially was denied. A year later, on August 23, 1976, it was allowed. Plaintiff's claim under Subchapter II also was allowed, although not at the same time. However, plaintiff was not placed on benefit status with regard to the Subchapter II claim.

Because of the conflict in entitlement findings, the Subchapter II award was reviewed by the Social Security Administration in June, 1977. The disability examiner and reviewing physician secured a Psychiatric Consultative Evaluation from Dr. Arthur Meisel, who reported that, although claimant was a chronic alcoholic, he was alert, cooperative, and responded well to questions and directions. Dr. Meisel's report stated that plaintiff had a history of blackouts and seizures precipitated by alcoholism, but his symptoms had stabilized during the preceding year, and seizure activity had decreased. Plaintiff's neurological examination was essentially negative, except for a mild organic brain syndrome which was under good medical control at that time.

The disability examiner and physician also reviewed a report from the Kingsboro Psychiatric Center, which showed that plaintiff had commenced a voluntary treatment program for alcoholism on April 20, 1977. At the time of his admission to the program, plaintiff was sober, well motivated, goal directed and reality oriented. He was not psychotic and had no memory impairment.

Based on these reports, the examiner concluded that plaintiff was "never under a severe disability", a "disability that would have affected him in terms of work related functions." The examiner decided that the Subchapter II claim should be denied "based on medical factors alone."

In 1979, two disability examiners and two physicians reviewed plaintiff's Subchapter XVI claim and reached substantially the same conclusion, *i.e.*, that plaintiff's physical impairments did not restrict him in

terms of work-related functions. Disability was terminated effective November 1979. Plaintiff was granted a hearing before an Administrative Law Judge (ALJ), at which he was represented by counsel. In a decision dated July 30, 1980, the ALJ agreed with the examiners' findings as to cessation of disability and directed that payments to plaintiff be discontinued as of the end of January, 1980. See 42 U.S.C. § 1383(a)(5). Plaintiff's request for review by the Appeals Council was denied on September 26, 1980, and the instant suit was then commenced in the United States District Court for the Southern District of New York.

On September 29, 1981, Judge Cannella granted defendant's motion to dismiss, holding that there was substantial evidence to support the Secretary's decision. We affirm.

### DISCUSSION

■ On an appeal such as this, we are faced with a simple reality which appellants often overlook, namely, that factual issues need not have been resolved by the Secretary in accordance with what we conceive to be the preponderance of the evidence. Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rivera v. Harris, supra,* 623 F.2d at 216. We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978). We agree with Judge Cannella that there was substantial evidence to support the Secretary's decision.

■ Plaintiff's principle contention on this appeal relates to his alcoholism. Plaintiff contends, and the Secretary agrees, that chronic alcoholism can be disabling if it results in serious personality disorders as set forth in 20 C.F.R. App. I, § 12.04 or in a substantial physical impairment, *Singletary v. Secretary of Health, Education and Welfare,* 623 F.2d 217, 220 (2d Cir. 1980). However, if there is a continuing interrelationship between the excess consumption of alcohol and the disability, such that termination of the former will end the latter, the issue for the Secretary is whether the claimant has lost the voluntary ability to control his drinking. *Adams v. Weinberger,* 548 F.2d 239, 244 (8th Cir. 1977).

The ALJ found that plaintiff's seizures or black-out spells were alcohol induced. This finding was supported by the medical proof, and plaintiff himself conceded that he had seizures only when he drank. The record also shows that plaintiff voluntarily participated in alcohol treatment programs. For example, after plaintiff voluntarily entered the treatment program at Kingsboro Psychiatric Center in April 1977, he remained sober until May 1978. Within a week after he resumed drinking plaintiff voluntarily referred himself to the Kings County Hospital Center for further treatment.

Dr. Head, who examined plaintiff on November 13, 1979, described the plaintiff in much the same manner as had Dr. Meisel in 1977. Dr. Head said that plaintiff was alert and oriented, that his memory, comprehension and concentration were intact, and that there was no evidence of delusions, hallucinations, phobias, obsessions, compulsions, or psychosomatic difficulties. Plaintiff was able to travel around the city on his own, do his own chores and shopping, and attend to his own needs.

Dr. Head reported that plaintiff had been in an alcohol treatment program for six years and was then attending three to four times a week. He stated that plaintiff had been able to "at least overcome his alcoholism temporarily." Dr. Head felt that plaintiff needed to continue his treatment program and would benefit from vocational rehabilitation and guidance. He failed however "to find any evidence of major psychopathology which would totally preclude this patient from working at the present time."

The ALJ, after referring specifically to Dr. Head's report, found that plaintiff had no significant secondary damage because of alcoholism, that his seizure disorder resulted from alcohol abuse, but that he was in an

alcohol treatment program. He also found that, as of November 1979, plaintiff's "alcoholism and other impairments were not of a severity to significantly affect his capacity to perform basic work-related functions."

Dr. Geller, Medical Consultant for the Bureau of Disability Insurance, reported on January 8, 1980:

> Claimant has a moderate impairment by virtue of his seizure disorder which is under far [sic] control since he has abstained from alcohol, however he should not work around heavy machinery or in situations where seizures may be hazardous to himself or others.

The ALJ also noted that plaintiff had diabetes, which was treated with oral medication, arthritis, hypertension and a mild respiratory disorder. He stated, however, that "medical evidence does not show that any of these conditions impose significant limitations upon the claimant's ability to perform basic work-related functions", and that, apart from the effects of alcohol abuse, there was an "absence of evidence of any other severe impairment." The ALJ made specific reference to plaintiff's complaints of pain, but obviously was not impressed. He noted plaintiff's concession that his only pain medication was Tylenol, a non-prescription drug that may be found in almost any family's medicine cabinet.

Following the hearing before the ALJ on May 14, 1980, plaintiff's attorney requested and was given two extensions of time in which to submit supplemental medical reports. The only report submitted was from the Bronx-Lebanon Hospital Center showing that plaintiff had reported to the Center on May 29, 1980, complaining of headaches. Plaintiff told the hospital staff that his headaches occurred three or four times a week and that each of them lasted three or four days. The report indicated that plaintiff's blood pressure was 130/88, which was hardly indicative of hypertension. The report contained no objective findings to explain the headaches or to justify a claim of disability resulting from them. Other hospital reports in the record give no greater support to plaintiff's claim of disabling pain. The ALJ was entitled to rely on these negative reports, on the equally negative reports of the doctors, and on his own evaluation of plaintiff's and his sister's credibility in determining whether plaintiff suffered such serious pain as to be disabled. *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).

We agree with Judge Cannella that the Secretary's determination was based on a thorough evaluation of the evidence and that there was substantial evidence to support it. The judgment appealed from is affirmed.

TIMBERS, Circuit Judge, dissenting:

I regret that I am unable to concur in Judge Van Graafeiland's characteristically well written majority opinion. In dealing with one of the most disabling illnesses of our society—chronic alcoholism, I think it is critical that proper legal standards be applied in evaluating the evidence before denying or cutting off Social Security benefits. In my view neither the Secretary nor the ALJ applied proper legal standards here. I therefore respectfully dissent from the majority's affirmance of the judgment below.

Although the Secretary's decision ordinarily will be upheld if supported by substantial evidence, application of improper legal standards in evaluating the evidence alone is ground for reversal. *See Marcus v. Califano*, 615 F.2d 23, 27 (2 Cir. 1979); *Northcutt v. Califano*, 581 F.2d 164, 167 (8 Cir. 1978). I shall confine my discussion to the legal standards applied by the ALJ. Consequently I find it neither necessary nor appropriate to reach the substantial evidence issue addressed by the majority.

In my view the ALJ failed to apply proper legal standards in two respects: first, he improperly evaluated the evidence concerning appellant's alcoholism; and second, he failed to analyze sufficiently the interrelationship of the various factors relevant to a determination of appellant's disability. I shall discuss each of these in order.

## I.

### APPELLANT'S ALCOHOLISM

All of the exhibits submitted prior to and during the administrative hearing established that appellant is an alcoholic. Furthermore, although there was evidence that at times he had abstained temporarily from drinking, all of the doctors who examined him recognized that he is a chronic alcoholic. This diagnostic consensus apparently persuaded the ALJ that appellant's "chief limitations are the result of alcohol abuse." App. at 7. The ALJ then proceeded, however, to apply several inappropriate criteria in determining the relationship of appellant's alcoholism to his disability claim.

First, the ALJ remarked that "[s]ince the [appellant's] alleged seizures, or black-out spells, are alcohol induced, it is apparent that simple abstinence would remove this disorder." App. at 6. This simplistic approach to a serious illness has been sharply criticized by courts and represents no more than the ALJ's nonexpert conclusion. *See, e.g., Adams v. Weinberger,* 548 F.2d 239, 244 (8 Cir. 1977) (ALJ should have focused on alcohol addiction and voluntary ability to control its use rather than on the inability to abstain from alcohol consumption); *Griffis v. Weinberger,* 509 F.2d 837, 838 n.1 (9 Cir. 1975) ("Some alcoholics can stop; more cannot."). To the extent that the ALJ's conclusion reflected his own personal predilections about an individual's ability to abstain from drinking, they were wholly inappropriate.

Second, the only substantive reference in the ALJ's findings to why appellant's alcoholism was not a sufficient disability was the following:

1. The ALJ's discussion of appellant's alcoholism was especially significant in this case because the ALJ asserted that alcoholism was appellant's chief limitation. App. at 7. He accordingly gave less weight to appellant's other medical problems.

2. 42 U.S.C. § 1382(e)(3)(A) in relevant part provides:
   "No person who is an aged, blind, or disabled individual solely by reason of disability, ...

"The medical evidence establishes that the claimant's seizure disorder is a result of alcohol abuse, that the claimant is in an alcohol treatment program, and that the claimant has no significant secondary damage because of alcoholism." App. at 7.[1]

Only the latter two clauses provide any possible indication of the standards the ALJ might have used to evaluate appellant's alcoholism. I shall discuss each of these in order.

*Participation in Alcohol Treatment Program.*

Although the ALJ never explained how appellant's participation in an alcohol treatment program is relevant to the ALJ's conclusion that appellant was not disabled, it appears that the ALJ viewed this involvement as indicative either of appellant's ability to control his drinking or of the likelihood that appellant's drinking problems will diminish with continued treatment.

In my opinion, it is unnecessary to pursue further either construction of the ALJ's statement. This is so because appellant was required by statute to undergo treatment at an institution recognized by the Secretary as a prerequisite for continued eligibility for Supplemental Security Income (SSI) benefits. *See* 42 U.S.C. § 1382(e)(3)(A) (1976).[2] Consequently this fact has no possible legal relevance to the question of whether appellant is disabled. It seems hardly fair or sensible to penalize appellant for participating in an alcohol treatment program in compliance with the statutory requirements.

shall be an eligible individual ... if such individual is medically determined to be a drug addict or an alcoholic *unless* such individual is undergoing any treatment that may be appropriate for his condition as a drug addict or alcoholic ... at an institution or facility approved ... by the Secretary ... and demonstrates that he is complying with the terms, conditions, and requirements of such treatment ...." (emphasis added).

*Significant Secondary Damage.*

The ALJ also relied on the apparent absence of evidence that appellant had sustained "significant secondary damage because of alcoholism." App. at 7. Although such a medical finding in the past has led courts to bar alcoholics from obtaining SSI benefits, chronic addiction and loss of voluntary ability to control the use of alcohol has been recognized increasingly as a basis for disability, regardless of organ damage. *See Adams v. Weinberger, supra,* 548 F.2d at 243 ("By focusing on 'the absence of evidence that claimant has significant organ damage that precludes work activity,' the Administrative Law Judge and Appeals Council applied an improper legal standard . . . ."); *Griffis v. Weinberger, supra,* 509 F.2d at 838 ("The presence or absence of 'underlying' physical or mental impairment as accompaniments or products of the disease may be relevant evidence relating to the decision of [whether the claimant is disabled], but absence of them is not controlling.").

Accordingly, in my view, the ALJ should have gone beyond mere recitation of an absence of significant secondary damage and should have evaluated appellant's alcoholism according to his voluntary ability to control its use.

## II.

### INTERRELATIONSHIP OF FACTORS

In addition to evaluating appellant's alcoholism according to improper legal standards, the ALJ failed to interrelate adequately the various factors that are commonly applied in SSI cases.

Four factors traditionally are considered in determining whether a disability exists: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by the claimant and corroborated by others who have observed him; and (4) claimant's age, educational background, and work history. *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4 Cir. 1962). These factors must be considered in combination with each other. *Id.; see also DePaepe v. Richardson,* 464 F.2d 92, 94 (5 Cir. 1972) ("It is obvious that *all* of these elements of proof must be considered together and in combination with each other, and not just one or two with the others excluded."); *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977) ("All of these elements of proof must be considered together and in combination with each other."); *Richards v. Mathews,* 424 F.Supp. 474, 478 (W.D.N.Y.1977) (the four elements should be considered interrelatedly). It is not sufficient therefore under established law merely to consider each factor in *isolation* (which the ALJ did here) without analyzing the *collective* effect of the several variables (which the ALJ did not do here).

As stated above, the ALJ did address separately each of these four factors in his decision. He did review some of the medical findings and diagnostic opinions, mentioned that appellant testified at the hearing about "severe pain from arthritis and severe headaches," App. at 6, and briefly summarized appellant's educational and work background. The ALJ made no effort, however, to interrelate these separable items and assess their total impact on the question of appellant's disability. For example, appellant is a functional illiterate who has worked at primarily unskilled occupations. In addition to his alcoholism, he suffers from arthritis, diabetes, dizziness and frequent headaches. Furthermore, he experiences blackouts, a condition that has been connected to appellant's alcoholism. The ALJ has left wholly unanswered the critical question of how these facts, when analyzed in combination, affect appellant's disability. Surely the combined effect of appellant's age (48 at the time the Social Security Administrator determined that he no longer was sufficiently disabled to warrant continued SSI benefits), illiteracy, and assorted illnesses would more likely lead to a finding of disability than if each item were examined in isolation. *See Dillon v. Celebrezze,* 345 F.2d 753, 757 (4 Cir. 1965) (criticizing the fragmentation of the claimant's ailments).

In urging a remand to enable the ALJ to make some effort at analyzing the interrelationship of the four *Underwood* factors, I am not suggesting that the ALJ did not carefully consider the testimony and exhibits. In his opinion, the ALJ said that he "carefully considered all the testimony given at the hearing and the documents described in the List of Exhibits attached to [his] decision." App. at 6. There is no reason to question this assertion. *See Miles v. Harris*, 645 F.2d 122, 124 (2 Cir. 1981).

The point, however, is that it is imperative that an ALJ satisfactorily make clear in his decision that he has applied the appropriate analytical formula in reaching his conclusion. In this case, the ALJ has not adequately demonstrated that he has properly applied the four factor test that is appropriate in SSI cases.

I would vacate the judgment below and remand the case to the district court with instructions to remand the case to the Secretary for reconsideration in light of the correct legal standards outlined above. From the majority's refusal to do so, I respectfully dissent.