**Robert SAPIENZA, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 93 Civ. 7201 (JES).

United States District Court, S.D. New York.

Aug. 14, 1995.

Irwin M. Portnoy, Blauvelt, NY, for plaintiff.

Mary Jo White, United States Attorney, S.D.N.Y., New York City (Lorraine S. Novinski, Assistant United States Attorney, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Robert Sapienza ("Sapienza") moves for judgment on the pleadings reversing a final decision of the Secretary of Health and Human Services (the "Secretary") denying his claim for disability insurance benefits, or, in the alternative for remand for further proceedings. For the reasons that follow, Sapienza's motion is denied in its entirety.

## BACKGROUND

Sapienza worked as a fire fighter from 1977 through 1991. Transcript of Administrative Record ("Tr.") at 69. On November 3, 1990, Sapienza was injured while performing his duties as a fire fighter. *Id.* at 99. Due to those injuries, Sapienza ceased working as a fire fighter and took medical leave. *Id.* at 43. Approximately six weeks after the accident, with physician's approval, Sapienza returned to work at the fire department performing "light duty" tasks such as mopping and sweeping. *Id.* at 205, 296. He continued to receive his regular salary until December 1, 1991, when he retired from the fire department and began receiving pension disability benefits. Tr. at 44.

Prior to applying for disability benefits with the Department of Health and Human Services ("HHS"), Sapienza consulted several doctors regarding his injury. Dr. Alverado examined Sapienza on November 4, 1990, the day following the accident. Tr. at 131. Dr. Alverado found that Sapienza had a full range of neck motion with some tenderness on full extension and rotation of the left upper extremity. *Id.* Dr. Alverado diagnosed Sapienza's condition as a neck sprain, put Sapienza on medical leave, *id.*, and recommended two weeks of physical therapy, a cervical collar and over-the-counter pain relievers. *Id.* at 125–26.

On November 20, 1990, Dr. Ira Neustadt, a neurologist, examined Sapienza and concluded that he had sustained mild head and neck trauma. Tr. at 291–92. Sapienza's neurological exam was within normal limits, and he was observed to be in no severe distress. Tr. 291. Sapienza exhibited a full range of motion of the neck in all directions. *Id.* Dr. Neustadt recommended, *inter alia,* hot packs, warm showers, light massage and the occasional use of anti-inflammatory agents. *Id.* at 292.

On December 17, 1990, Dr. Peter Marchisello examined Sapienza, noting pain in the left shoulder and neck and numbness in the tips of the fingers of his left hand. Tr. at 203. Sapienza's neurological tests were negative with respect to motor power, sensation and reflexes. *Id.* at 204. He walked with a normal gait and showed a full range of motion of the cervical spine in both supine and standing positions. *Id.* Sapienza's circulation in his upper extremities was normal, and his hand strength appeared good. *Id.* Dr. Marchisello diagnosed Sapienza's condition as a cervical strain. Tr. at 203–05. Dr. Jacob Barie, the examining radiologist, and Dr. Marchisello concluded that an M.R.I. suggested the possibility of disc herniation. *Id.* at 295–96. Dr. Marchisello's December 31, 1990 report noted that Sapienza was de-

pressed about his physical condition and the M.R.I. results. *Id.* at 201. Dr. Marchisello prescribed physical therapy, anti-inflammatory medication, and the use of a cervical collar. *Id.* at 202.

On January 28, 1991, Dr. Valapet Sridaran, a specialist in physical medicine and rehabilitation, examined Sapienza. Tr. at 297–98. Sapienza appeared in no distress although he held his neck in a guarded manner. *Id.* at 297. Examination of the neck revealed normal curvature. On palpation, mild tenderness and para vertebral spasm appeared. *Id.* A neurological exam evidenced mild wasting but no gross weaknesses. Tr. at 297. Dr. Sridaran concluded that Sapienza suffered from mild acute radiculopathy. *Id.* at 298.

Dr. Michael Kamalian examined Sapienza on three occasions in January and February 1991. Tr. at 287. Dr. Kamalian found that Sapienza was neurologically intact in all extremities and enjoyed full movement of his cervical spine. *Id.* Dr. Kamalian also concluded that Sapienza suffered from a herniated disc and recommended two weeks of physical therapy. *Id.*

Sapienza filed an application for disability insurance benefits with the HHS on June 8, 1992. Tr. at 43–45. Thereafter, on June 30, 1992, Dr. Donald Phillips examined Sapienza in connection with his application for disability benefits. *Id.* at 304–06. His diagnosis confirmed the conclusions of Sapienza's other examining physicians. *Id.* In a report dated July 24, 1992, following an examination of Sapienza, Dr. Syed Moin noted evidence of disc herniation and indicated that Sapienza displayed no behavior suggestive of a significant psychiatric disorder. *Id.* at 308–13. Dr. Moin reported that Sapienza could stand or walk up to two hours a day and had no limitation on how long he could sit. Tr. at 312. Dr. Moin's report was inconclusive, however, on whether Sapienza could work absent further testing. *Id.* at 311–12. In a letter dated August 3, 1992, Dr. Thomas Lansen, a neurosurgeon, indicated that Sapienza was suffering from some degenerative disc changes, *id.* at 316, and recommended a cervical collar, anti-inflammatory agents and massage as treatments. *Id.*

In a letter dated November 30, 1992, Dr. Nathaniel Shafer stated that he had reviewed the reports of Sapienza's previous examining physicians and had also performed his own examination. Tr. at 319–24. Dr. Shafer diagnosed severe sprain and strain of the cervical spine, radiculitis due to disc herniation and bulging, sprain and strain of the dorsal lumbar spine, contusion of the skull and cerebral concussion. *Id.* at 322. Dr. Shafer concluded that Sapienza was totally disabled and could not perform any duties as a fireman or any other occupation. *Id.* at 324.

HHS initially denied Sapienza's application for disability benefits and again on reconsideration. Tr. at 55–57, 60–62. At Sapienza's request, a *de novo* hearing was held in front of an HHS Office of Administrative Appeals Administrative Law Judge ("ALJ") on April 7, 1993. *Id.* at 23–42. At the hearing Sapienza was represented by counsel, and voluminous medical evidence was presented recounting the treatment and evaluations described above. *Id.* Sapienza stated that his daily activities include walking his three children to the school bus, walking the dog, and taking walks around the neighborhood in the evening. *Id.* at 78, 95. Sapienza further described how he mows the grass, helps his wife with household tasks including house cleaning and caring for their children. Tr. at 78, 95. In addition, he stated that he drives a car, attends local car shows, and drives up to an hour into the city to spend time at the firehouse. *Id.* at 91–92.

The ALJ issued an opinion on May 12, 1993, finding that Sapienza was not disabled within the meaning of Social Security Act §§ 216(i) and 223, as amended, and was therefore not entitled to benefits. Tr. at 15–19. The ALJ considered Sapienza's residual functional capacity, age, education, and work experience in reaching his conclusion. *Id.* at 19. The ALJ found that Sapienza had proven that he suffered from degenerative disc disease of the cervical spine with radiculopathy, which imposes restrictions on his ability to perform basic work-related functions, *id.* at 15, but that this condition was not severe enough to preclude Sapienza from performing sedentary work as described by 20 C.F.R. § 404.1567(a). *Id.* at 17.

In reaching his conclusions, the ALJ rejected Sapienza's assertion that Dr. Shafer was a treating physician. Tr. at 16. The ALJ reasoned that the initial and supplemental reports submitted into evidence showed that Dr. Shafer had examined Sapienza "only once, and this was for the purpose of submitting evidence that would qualify the claimant for Social Security disability." *Id.* Therefore, the ALJ accorded "little weight" to Dr. Shafer's opinion that Sapienza was disabled. *Id.*

The ALJ concluded that Sapienza's own statements concerning his daily activities supported the conclusion that he is able to perform sedentary work. Tr. at 17. Sapienza's complaints of disabling pain were found not to be "credible to the incapacitating extent alleged," *id.* at 17, since Sapienza routinely engaged in activities such as driving 100 to 200 miles a week to visit friends at the firehouse and helping his wife with household chores and care of their children. *Id.* The ALJ found that Sapienza could not perform his past relevant work as a fire fighter but has the residual functional capacity to perform a full range of sedentary work in light of his age (forty-five), college education, and work experience. *Id.* at 17, 19.

The ALJ's decision became the final decision of the Secretary when the Appeals Council declined Sapienza's request for review on August 24, 1993. Tr. at 1–5. Sapienza now moves pursuant to 42 U.S.C. § 405(g) for judicial review and modification of the Secretary's decision, or in the alternative, for a remand of the case for the consideration of new material evidence concerning psychological examinations conducted after the ALJ's decision.

## DISCUSSION

■ The findings of the Secretary of Health and Human Services as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *see Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982),

*cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *see also Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980). Although the ALJ should note a careful consideration of the exhibits presented in evidence, he need not reconcile every piece of conflicting evidence. *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981). Furthermore, a district court may not substitute its own judgment for that of the Secretary, even if it might have reached a different result upon a *de novo* review. *See Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984); *see also Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983). The court need only decide whether substantial evidence supports the Secretary's decision. *See Mongeur,* 722 F.2d at 1038. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ It is undisputed that the medical testimony presented before the ALJ establishes that Sapienza lacks the physical capacity to perform his former job as a fire fighter. However, the record also strongly supports the conclusion that his physical condition was not such that he is unable to engage in any kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Mongeur,* 722 F.2d at 1037. That evidence when considered with Sapienza's own statements regarding his lifestyle, provides more than substantial support for the ALJ's conclusion that Sapienza is capable of performing sedentary work.[1]

At the hearing, Sapienza stated that he could lift ten to fifteen pounds for a maximum of ten to fifteen minutes, tr. at 36, although continual manipulation of light weights would cause pain in his neck and shoulders. *Id.* at 36–37. However, this iso-

---

1. Sedentary work requires the ability to occasionally walk and stand if the job duties require, lift weights of no more than ten pounds and sit

for most of the work period. *See* 20 C.F.R. § 404.1567(a).

lated statement about the limitations on his ability to lift is not sufficient to establish a lack of substantial evidence to support the ALJ's conclusion. *See Miles,* 645 F.2d at 124.

Sapienza also argues that the ALJ failed to follow the proper standard for evaluating the medical evidence of Sapienza's treating physicians pursuant to 20 C.F.R. § 404.1527 by erroneously considering Dr. Shafer to be a consulting physician rather than a treating physician. A treating physician is one who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and a physician-patient relationship with the applicant. *See Schisler v. Sullivan,* 3 F.3d 563, 568–69 (2d Cir.1993); *see also Mongeur,* 722 F.2d at 1039 n. 2. Generally, a treating physician's opinion will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schisler,* 3 F.3d at 566.

■ The administrative record provides substantial support for the ALJ's conclusion that Dr. Shafer was not a treating physician. The record indicates that Dr. Shafer had examined Sapienza only once while the other physicians had examined him on numerous occasions.[2] *See Mongeur,* 722 F.2d at 1039 n. 2 (physician examining claimant "only once or twice" not a treating physician). Therefore, Dr. Shafer's treatment of Sapienza lacked sufficient frequency or duration to be entitled to controlling weight.

Indeed, it is undisputed that Dr. Shafer's opinion is based in large part upon his review and summarizations of the reports produced by Sapienza's other examining physicians. Moreover, even if Dr. Shafer was a treating physician, the ALJ would not be obliged to give his opinion controlling weight because it was inconsistent with the other substantial

medical and non-medical evidence in the record referred to above which clearly established that Sapienza could perform sedentary work.

■ Sapienza also argues that the ALJ erred by not employing a vocational expert to determine what type of sedentary work was available. If a claimant's nonexertional impairments significantly diminish his ability to work beyond any incapacity caused solely from exertional limitations, and he is unable to perform the full range of employment under the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert. *See Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir.1986). This testimony must establish that jobs exist in the national economy which the claimant can obtain and perform. *Id.* Sapienza argues that by not considering his alleged psychological impairments, the ALJ failed to accurately evaluate his nonexertional impairments.

■ However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *See Bapp,* 802 F.2d at 602. The ALJ must determine the applicability of the medical vocational guidelines and the need for expert testimony on a case-by-case basis. *Id.* at 605. To establish that the medical vocational guidelines are inadequate and that the use of a vocational expert is mandatory, nonexertional impairments must "so narrow[ ] a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* This is not the case here.

■ Sapienza alleges that the ALJ erroneously failed to evaluate his psychological impairments along with his exertional impairments in concluding that the testimony of a vocational expert was not required. In his examination report dated December 31, 1990, Dr. Marchisello stated that "[t]he patient on examination today looks very tired. He is very depressed about his illness, and is upset

---

2. At the hearing, Sapienza indicated that he had been examined by Dr. Shafer on two or three occasions. Tr. at 38. The ALJ provided Sapienza's attorney the opportunity to submit additional reports from Dr. Shafer concerning these examinations so that he could decide whether to

consider Dr. Shafer a treating physician. *Id.* at 40–41. However, subsequent information received by the ALJ indicated that Dr. Shafer had not examined Sapienza on other occasions. *Id.* at 16.

about the M.R.I. report, and is anxious to have another opinion regarding the management of his problem." Tr. at 201.

While discussing Sapienza's difficulty in falling asleep, Dr. Shafer indicated that he had been treated "with infrared and ultrasound and he did obtain some relief because he suffers from a stress disorder having flashbacks." Tr. at 323. On the other hand, Dr. Moin's report stated that Sapienza did not display behavior indicative of a significant psychiatric disorder.

Except for these isolated statements, the record contains no evidence that Sapienza suffered from a psychological disability or is clinically depressed. Indeed, Sapienza failed to set forth any such claims at the administrative level, despite being represented by counsel. *C.f. Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984) (where claimant is unrepresented by counsel at proceedings before ALJ, duty evolves to probe into relevant facts) (citing *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972)). In sum, Sapienza's statement that he was disappointed and depressed about the result of his examination is insufficient to support a basis for finding a psychological impairment, especially when, as noted above, none was claimed.[3]

Sapienza asserts that in the event that this Court does not reverse the decision of the ALJ, the case should be remanded for consideration of new and material evidence by the Secretary. On June 2, 1994, Sapienza filed this so-called new evidence consisting of an affidavit by psychologist Dr. Rubin which states that he has treated Sapienza since June 29, 1993. Dr. Rubin indicates that Sapienza currently suffers from psychological impairments which prevent him from working but that he is slowly progressing and may be able to work again in the future.

The Social Security Act provides that a court may remand a case to the Secretary for the consideration of additional evidence, "but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceed-

ing." 42 U.S.C. § 405(g) (1988); *see also Mongeur,* 722 F.2d at 1038; *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988). However, in his application for disability benefits, Sapienza did not claim psychological impairments as a cause of his disability and it was thus clearly not material to the claim he had filed. Indeed, Dr. Rubin's diagnosis is based upon examinations which occurred nearly three years after the accident. This fact supports an inference that Sapienza did not even seek psychological counseling or evaluation until well after the hearing. It follows that this alleged impairment is essentially a new claim. This is especially true since, although his treatment had commenced prior to his appeal to the Secretary, no mention was made in that appeal of any psychological treatment by Dr. Rubin. Tr. at 333–39. In any event, Sapienza has failed to demonstrate good cause for not presenting this evidence to the Secretary earlier. Sapienza is free to pursue a new claim in the future.

## CONCLUSION

For the reasons set forth above, the decision of the Secretary is affirmed, Sapienza's request for costs is denied, and the Clerk of Court is ordered to close the above-captioned action.

It is SO ORDERED.

---

**3.** As a doctor of internal medicine with no experience in psychology or psychiatry, Dr. Shafer's notations regarding stress are hardly worthy of controlling weight.